IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| BRADLEY KOENNING, BRIAN MARTIN, and MORGAN RYALS, <br><br>　　　　　Plaintiffs, <br><br>vs. <br><br>THOMAS SUEHS, in his official capacity as Executive Commissioner, TEXAS HEALTH AND HUMAN SERVICES COMMISSION, <br><br>　　　　　Defendant. | § § § § § § § § § § § § § § § § CIVIL ACTION NO. 6:11-CV-00006 |

**COMPLAINT**

**I. INTRODUCTION**

1. Plaintiffs, Bradley Koenning, Brian Martin, and Morgan Ryals are young adults with disabilities residing in Texas. Each of these individuals is an eligible Medicaid beneficiary who, because of his or her physical disabilities and associated medical conditions, requires a customized power wheelchair with specialized components, including standing capability.

2. As Medicaid beneficiaries, Bradley, Brian, and Morgan are entitled to medically necessary durable medical equipment ("DME") through the home health benefit of the Texas Medicaid program. Despite their well-documented medical need for this type of customized power wheelchair, Defendant Thomas Suehs, acting in his official capacity as Executive Commissioner of the Texas Health and Human Services Commission ("HHSC"), unlawfully denied them the DME to which they are entitled.

3. Defendant's denial of this medically necessary DME was not based upon an individualized determination of each person's medical needs, but rather, resulted from the

application of Defendant's Medicaid policies, which establish numerous absolute exclusions of certain DME, including the type of custom power wheelchair that these young adults require.

4. Contrary to relevant provisions of Title XIX of the Social Security Act ("Medicaid Act") and its implementing regulations, Defendant Suehs categorically excludes numerous items of DME from Medicaid coverage for beneficiaries who are 21 years of age or older, regardless of their medical need for this equipment.

5. This case is brought to enjoin Defendant from applying unlawful rules and policies that create absolute exclusions of medically necessary DME and to secure the prospective relief necessary to ensure that Bradley, Brian, and Morgan receive the medically necessary custom power wheelchairs to which they are entitled.

## II. JURISDICTION AND VENUE

6. This action arises under Title XIX of the Social Security Act and the Due Process Clause of the United States Constitution. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, which gives district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States and 28 U.S.C. § 1343(a)(3) and (4), which grants jurisdiction over suits authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of any rights, privileges, or immunities guaranteed by the Constitution or by acts of Congress.

7. This Court has jurisdiction over Plaintiffs' claim for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure, and 42 U.S.C. § 1983.

8.	Venue is appropriate in the United States District Court, Southern District of Texas, Victoria Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this district.

### III.  PARTIES

9.	Plaintiff, Bradley Koenning is 23 years old and resides in DeWitt County, Texas. Mr. Koenning receives Supplemental Security Income ("SSI") based upon his disability and is categorically-eligible for the Texas Medicaid program.

10.	Plaintiff, Brian Martin, is 27 years old and resides in Chambers County, Texas. Mr. Martin receives Supplemental Security Income ("SSI") based upon his disability and is categorically-eligible for the Texas Medicaid program.

11.	Plaintiff, Morgan Ryals, is 25 years old and resides in Harris County, Texas. Ms. Ryals receives Supplemental Security Income ("SSI") based upon her disability and is categorically-eligible for the Texas Medicaid program.

12.	Defendant Thomas Suehs is the Executive Commissioner of HHSC, the single-state agency for the Texas Medicaid program.  42 U.S.C. § 1396(a)(5).  In his capacity as Executive Commissioner of HHSC, Mr. Suehs is ultimately responsible for ensuring that the operation of the Texas Medicaid program fully complies with the requirements of the Medicaid Act, its implementing regulations, and the U.S. Constitution.  He is sued solely in his official capacity for prospective relief.

### IV.  LEGAL FRAMEWORK OF THE MEDICAID PROGRAM

13.	In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-2 to establish the Medicaid program.  Medicaid is a voluntary, cooperative, federal-

state program designed to provide medically necessary health care to certain low income families and individuals with disabilities.

14.     As stated in the Medicaid Act, the purpose of the program is to enable states "to furnish…rehabilitation and other services to help such families and individuals attain or retain the capability for independence or self-care." 42 U.S.C. § 1396-1.  To achieve this purpose, states are required to administer their Medicaid programs "in the best interests of recipients." 42 U.S.C. § 1396a(a)(19).

15.     State participation in the Medicaid program is optional; however, once a state chooses to participate, it must comply with all federal requirements governing the program.  42 U.S.C. § 1396a.  Texas Medicaid, like all participating state Medicaid programs, receives matching funds called federal financial participation ("FFP") for the health care it provides to eligible beneficiaries. 42 U.S.C. § 1396b(a)(1); 42 C.F.R. § 430.30(a). FFP is defined as "the Federal Government's share of a State's expenditures under the Medicaid program." 42 C.F.R. § 400.203.  Presently, the federal payment rate for Medicaid services in Texas is approximately sixty percent (60%).

16.     To receive FFP, each state must develop a state plan that complies with all requirements of the Medicaid Act.  42 U.S.C. § 1396a.

17.     Pursuant to the Medicaid Act, all participating states must include within their state plans the following broad categories of services:  inpatient and outpatient hospital care; physician services; laboratory and x-rays; nurse-midwife services; rural health clinic services; prenatal care; family planning services; nursing facility services; **home health services (including medical equipment, appliances, and supplies);** pediatric and nurse practitioner services; early and periodic screening, diagnosis, and treatment services ("EPSDT") for

beneficiaries under the age of twenty-one (21); vaccines for children; and federally qualified health centers. *(Emphasis added)* 42 U.S.C. §§ 1396a(a)(10), 1396a(a)(10)(D), 1396d(a); 42 C.F.R. § 440.70(b)(3).

18. Medical equipment, also referred to as DME, is a mandatory service within the broader category of home health services and is a required benefit of each state Medicaid plan. 42 U.S.C. § 1396a(a)(10)(D); 42 C.F.R. § 440.70(b)(3).

19. While federal regulations do not define the term DME, Texas Medicaid has adopted two definitions of this service. By state regulation, DME is defined as: "[m]achinery or equipment which meets one or both of the following criteria: (A) the projected term of use is more than one year; or (B) reimbursement is made at a cost more than $1,000." 1 Tex. Admin. Code § 354.1031(b)(12).  By state policy, DME is: medical equipment or appliances that are manufactured to withstand repeated use, ordered by a physician for use in the home, and required to correct or ameliorate a client's disability, condition, or illness.   2010 TMPPM DME Handbook, 1.2.2.

20. As required by the Medicaid Act, states must establish reasonable standards for determining the extent of medical assistance under the plan and must ensure that each service, including DME, is "sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 U.S.C § 1396a(a)(17); 42 C.F.R. § 440.230(b).

21. The application of these legal requirements to a state's coverage of DME has been addressed by the U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS") (formerly, Health Care Financing Administration or HCFA).  In 1998, HCFA issued a policy statement following the Second Circuit's decision in *DeSario v. Thomas,* (2nd Cir. 1998), *vacated and remanded sub nom. Slekis v. Thomas*, 525 U.S. 1098

(1999), to clarify certain legal requirements governing the provision of DME to eligible Medicaid beneficiaries. In this official guidance, commonly referred to as the *DeSario Letter*, HCFA explained that "a State must establish reasonable standards, consistent with the purpose of the Medicaid Act…" and must "ensure that the amount, duration, and scope of coverage are reasonably sufficient to achieve the purpose of the service (42 C.F.R. § 440.230(b))."

22. HCFA further advised state Medicaid programs that:

[A] state will be in compliance with federal Medicaid requirements, only if, with respect to an individual applicant's request for an item of ME [medical equipment] the following conditions are met:

- The process is timely and employs reasonable and specific criteria by which an individual item of ME will be judged for coverage under the State's home health services benefit. These criteria must be sufficiently specific to permit a determination of whether an item of ME that does not appear on a State's pre-approved list has been arbitrarily excluded from coverage based solely on a diagnosis, type of illness, or condition.

- The State's process and criteria, as well as the State's list of pre-approved items, are made available to beneficiaries and the public.

23. Finally, HCFA stated that a DME policy that "provide[s] no reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list, is inconsistent with the federal law discussed above."

24. Pursuant to this official guidance, state Medicaid programs cannot establish irrebuttable presumptions against coverage of medically necessary DME. To do so conflicts with Medicaid's reasonable standards requirement and its implementing regulation - the amount, duration, and scope rule. 42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 440.230.

25. To ensure access to medically necessary DME, CMS has also advised states that Medicaid beneficiaries who are seeking DME must be afforded a fair hearing to challenge any adverse action by the state. 42 C.F.R § 431.220(a)(1)-(2). State Medicaid hearing systems "must

meet the due process standards set forth in *Goldberg v. Kelly,* 397 U.S. 254 (1970), and any additional standards specified in this subpart." 42 C.F.R. § 431.205(d).

26. As a result of past litigation concerning the due process rights of Medicaid beneficiaries, Defendant began affording fair hearings to Medicaid beneficiaries who are denied "non-covered" DME in October 2008. Defendant's regulations governing Medicaid fair hearings, however, require the hearing officer to uphold the agency's decision if it is in accordance with the agency's policies and procedures. 1 Tex. Admin. Code § 357.23(c). Hearing officers have no authority to determine whether the agency's policies and procedures are themselves unlawful.

27. Defendant has not established any other process for Medicaid beneficiaries who are 21 years of age and older to obtain items of DME that the agency has, by policy, excluded from Medicaid coverage.

## V. STATEMENT OF FACTS

*Bradley Koenning*

28. Bradley Koenning is a 23 year old individual with a disability and an eligible Medicaid beneficiary in the state of Texas.

29. On July 31, 2005, Bradley sustained a C-4/C-5 spinal cord injury in a motocross accident. As a result, Bradley is paralyzed below shoulder level and is unable to walk. He presently has no functional use of his hands.

30. On or about August 12, 2010, Bradley was evaluated at the Seton Brain and Spine Institute by two occupational therapists to assess his medical need for the kind of customized power wheelchair that will address his myriad medical conditions and his functional need for mobility.

31. Working with Bradley's physical medicine and rehabilitation physician, the occupational therapists identified each custom component that Bradley requires to address his mobility and medical needs. Examples of these custom features include power tilt/recline, drive and stand, seat elevation, elevating leg rests, and sip and puff switch access. Bradley was allowed trial use of the recommended wheelchair to ensure that he is able to access and benefit from these custom features.

32. Upon completing this assessment, Bradley's team of medical professionals drafted a letter of medical necessity, explaining in detail each of the recommended custom components and why these are necessary to address Bradley's mobility and medical needs. For example, the switch and puff switch access will allow Bradley to independently drive the chair and access the other power features of the wheelchair. The power tilt/recline mechanism will enable Bradley to independently reposition himself or weight shift to avoid skin breakdown.

33. Of particular importance to Bradley's overall health status, however, is the standing function of the recommended power wheelchair. According to his treating health care professionals, this feature will address a number of medical complications faced by Bradley, including the risk of skin breakdown and the development of contractures secondary to prolonged sitting. In addition, the ability to stand on a regular basis will reduce the likelihood of scoliosis and the loss of bone density. Regular and consistent standing will lessen pressure on Bradley's internal organs, thus allowing for better digestive, bowel, and bladder management and improved respiratory function. Finally, the standing component of the recommended wheelchair will afford Bradley the ability to participate in mobility-related activities of daily living.

34.     On or about December 12, 2010, a Medicaid-enrolled rehabilitation equipment supplier submitted a request for prior authorization of the recommended customized power wheelchair, along with other required documentation, to the Texas Medicaid Healthcare Partnership ("TMHP").

35.     THMP is Defendant's contracted entity that reviews Medicaid prior authorization requests for DME and determines whether to approve or deny the requested equipment. In making these determinations, TMHP is required to apply Defendant's policies and procedures with regard to coverage of DME, including the absolute exclusions established by Defendant in policy.

36.     On December 15, 2010, TMHP denied the customized power wheelchair recommended for Bradley by his treating health care professionals, stating that "[a] power wheelchair with a built-in power standing feature is a type of mobile stander. Texas Medicaid does not cover mobile standers."

37.     TMHP denied this prior authorization request based upon Defendant's policies, which cover certain custom power wheelchairs, but specifically exclude coverage of a power wheelchair with standing feature. Texas Medicaid Bulletin, No. 231, September/October. According to this policy, "[A] standing system of a power wheelchair is not a benefit of Texas Medicaid." Texas Medicaid Bulletin, No. 231, September/October 2010.

38.     Defendant's policy establishing an absolute exclusion of this DME denies Bradley access to a reasonable and meaningful prior authorization process. In reviewing his request for prior authorization of a customized power wheelchair, TMHP did not consider whether the recommended wheelchair meets Defendant's definitions of DME because Defendant has failed

to establish a reasonable and meaningful procedure for beneficiaries to request items of DME that are not identified as covered by Medicaid, as required by CMS in the *DeSario* guidance.

39. In addition to Defendant's failure to establish a prior authorization process that considers whether a requested item meets the state's own definition of DME, Defendant's fair hearing process also fails to afford consideration of this essential question. Hearing officers cannot rule in a beneficiary's favor when agency policy specifically excludes a particular item of DME. Instead, they must uphold a denial of medically necessary DME based upon Defendant's unlawful policies, thus denying Bradley an opportunity to establish that the item he seeks meets Defendant's definition of DME and is, in fact, covered by Texas Medicaid.

*Brian Martin*

40. Brian Martin is a 27 year old individual with a disability and an eligible Medicaid beneficiary in the state of Texas.

41. At the age of twenty, Brian sustained a spinal cord injury in a diving accident, which left him paralyzed and unable to walk. Brian also has limited use of his hands.

42. On or about June 11, 2010, Brian was evaluated at the Texas Institute for Rehabilitation and Research (TIRR) Memorial Hermann by an occupational therapist to assess his medical need for a customized power wheelchair that will address his numerous medical conditions and his functional need for mobility.

43. Working with a certified Assistive Technology Provider, the occupational therapist identified each custom component that Brian requires to address his mobility and medical needs. Examples of these custom features include power tilt/recline, drive and stand, seat elevation, elevating leg rests, and a head array that allows Brian to independently control all power features of the wheelchair. Brian was allowed to use the recommended wheelchair in his

home on a trial basis and demonstrated the ability to operate all power functions of the wheelchair.

44.     Upon completion of this assessment, Brian's medical professionals drafted a letter of medical necessity, explaining in detail each of the recommended custom components and why these are necessary to address Brian's mobility and medical needs.  For example, the head array will allow Brian to independently drive the chair and access the other power features of the wheelchair.  The power tilt/recline mechanism will enable Brian to independently reposition himself or weight shift to avoid skin breakdown.

45.     Also critical to Brian's overall health status is the standing function of the recommended power wheelchair.  According to his treating health care professionals, this feature will address a number of medical complications that he faces, including the risk of skin breakdown and the development of contractures secondary to prolonged sitting.  In addition, the ability to stand on a regular basis will reduce the loss of bone density and associated medical problems. Regular and consistent standing will lessen pressure on Brian's internal organs, thus allowing for better digestive, bowel, and bladder management and improved respiratory function. Finally, the standing component of the recommended wheelchair will afford Brian the ability to participate in mobility-related activities of daily living.

46.     In August 2010, a Medicaid-enrolled rehabilitation equipment supplier submitted a request for prior authorization of the recommended customized power wheelchair, along with other required documentation, to TMHP.

47.     On August 16, 2010, TMHP denied the customized power wheelchair recommended for Brian by his treating health care professionals, stating that the wheelchair included a power seat elevation system for which Brian was not qualified.  The request for prior

authorization was resubmitted in October 2010, and was denied on the basis that "[a] power wheelchair with a built-in power standing feature is a type of mobile stander. Texas Medicaid does not cover mobile standers . . ."

48.  TMHP denied this prior authorization request based upon Defendant's policies, which cover certain custom power wheelchairs, but specifically exclude coverage of a power wheelchair with standing feature. According to this policy, a "power standing system of a wheeled mobility device is not a benefit" of home health services. Texas Medicaid Bulletin, No. 232, November/December 2010.

49.  Defendant's policy establishing an absolute exclusion of this DME denies Brian access to a reasonable and meaningful prior authorization process. In reviewing his request for prior authorization of a customized power wheelchair, TMHP did not consider whether the recommended wheelchair meets Defendant's definitions of DME because Defendant has failed to establish a reasonable and meaningful procedure for beneficiaries to request items of DME that are not identified as covered by Medicaid, as required by CMS in the *DeSario* guidance.

50.  In addition to Defendant's failure to establish a prior authorization process that considers whether a requested item meets the state's own definition of DME, Defendant's fair hearing process also fails to afford consideration of this essential question. Hearing officers cannot rule in a beneficiary's favor when agency policy specifically excludes a particular item of DME. Instead, they must uphold a denial of medically necessary DME based upon Defendant's unlawful policies, thus denying Brian an opportunity to establish that the item he seeks meets Defendant's definition of DME and is, in fact, covered by Texas Medicaid.

*Morgan Ryals*

51.     Morgan Ryals is a 25 year old individual with a disability and an eligible Medicaid beneficiary in the state of Texas.

52.     Morgan was diagnosed with spina bifida at birth, a medical condition involving the incomplete closure of the embryonic neural tube. As a result of this congenital condition, Morgan is paralyzed and unable to walk. Additionally, Morgan was diagnosed with a brain tumor at 2 1/2 years of age and sustained further right side weakness and paralysis of her right hand, following brain surgery. Morgan has a number of other physical conditions including scoliosis, hip contractures, and trunk weakness.

53.     On or about August 19, 2010, Morgan was evaluated by a licensed physical therapist at TIRR Memorial Hermann to assess her medical need for a customized power wheelchair and to identify each custom component that she requires to address her mobility and medical needs. Examples of these custom features include power tilt/recline, drive and stand, seat elevation, and elevating leg rests.

54.     This assessment was reviewed and approved by Morgan's physician and subsequently submitted by an enrolled Medicaid provider to TMHP for prior authorization.

55.     On or about August 31, 2010, TMHP issued denial notices to Morgan and the wheelchair provider. The notice sent to Morgan explained the basis for the denial as follows:

> You have asked for a power standing function for your power wheelchair. A power standing function on a power wheelchair is a type of mobile stander. Mobile standers are not covered by Texas Medicaid Home Health Services. Because mobile standers are not covered by Texas Medicaid Home Health Services, your request cannot be approved.

56.     Defendant's policy establishing an absolute exclusion of this DME denies Morgan access to a reasonable and meaningful prior authorization process. In reviewing her request for

prior authorization of a customized power wheelchair, TMHP did not consider whether the recommended wheelchair meets Defendant's definitions of DME because Defendant has failed to establish a reasonable and meaningful procedure for beneficiaries to request items of DME that are not identified as covered by Medicaid, as required by CMS in the *DeSario* guidance.

57.   In addition to Defendant's failure to establish a prior authorization process that considers whether a requested item meets the state's own definition of DME, Defendant's fair hearing process also fails to afford consideration of this essential question. Hearing officers cannot rule in a beneficiary's favor when agency policy specifically excludes a particular item of DME. Instead, they must uphold a denial of medically necessary DME based upon Defendant's unlawful policies, thus denying Morgan an opportunity to establish that the item she seeks meets Defendant's definition of DME and is, in fact, covered by Texas Medicaid.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

58.   Plaintiff restates and incorporates by reference each of the allegations in Paragraphs 1 through 57, above.

59.   Defendant's rules and policies, which unreasonably exclude medically necessary items of DME from coverage, conflict with the reasonable standards requirement of the Medicaid Act, 42 U.S.C. § 1396a(a)(17), and are preempted by the Supremacy Clause of the United States Constitution, art. VI, cl 2.

60.   Defendant's rules and policies, which unreasonably exclude medically necessary items of DME from coverage, conflict with Medicaid's amount, duration, and scope rule, 42 C.F.R. § 440.230(b-c), and are preempted by the Supremacy Clause of the United States Constitution, art. VI, cl 2.

## SECOND CAUSE OF ACTION

61. Plaintiff restates and incorporates by reference each of the allegations in Paragraphs 1 though 57, above.

62. Defendant's rules and policies, which establish unlawful exclusions of certain items of DME, and which require hearing officers to uphold these unlawful policies, deprive Bradley Koenning, Brian Martin, and Morgan Ryals of their due process right to a fair hearing as guaranteed by the Fourteenth Amendment to the United States Constitution. U.S. CONST. amend. XIV.

63. These violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution.

## THIRD CAUSE OF ACTION

64. Plaintiff restates and incorporates by reference each of the allegations in Paragraphs 1 though 57, above.

65. Defendant's rules and policies, which establish unlawful exclusions of certain items of DME and which require hearing officers to uphold these unlawful policies, deprive Bradley Koenning, Brian Martin, and Morgan Ryals of their due process right to a fair hearing, in violation of relevant provisions of the Medicaid Act, including 42 U.S.C. § 1396a(a)(3)

66. These violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983 and the Medicaid Act.

## VII.   REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1. Assume jurisdiction over the case;

2. Issue a declaratory judgment declaring that Defendant's rules and policies that categorically exclude medically necessary items of DME from coverage conflicts with the reasonable standards requirement of the Medicaid Act, 42 U.S.C. § 1396a(a)(17) and the amount, duration, and scope rule, 42 C.F.R. § 430.230 and are preempted by the Supremacy Clause of the United States Constitution;

3. Grant preliminary and permanent injunctions against Defendant enjoining him from categorically excluding medically necessary items of DME from coverage in conflict with the reasonable standards requirement of the Medicaid Act and the amount, duration, and scope rule;

4. Issue a declaratory judgment declaring that Defendant's rules and policies violate the due process protections afforded by the Fourteenth Amendment to the United States Constitution and relevant provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.200 *et seq.*;

5. Grant preliminary and permanent injunctions against Defendant enjoining him from violating the due process rights of Medicaid beneficiaries afforded by the Fourteenth Amendment to the U.S. Constitution and the Medicaid Act, 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.200 *et seq.*;

6. Order Defendant to prior authorize the medically necessary DME to which Plaintiffs are entitled;

7. Award Plaintiffs their costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

8 Grant such other prospective relief that is just, necessary, and appropriate to protect the rights of Plaintiffs.

Respectfully submitted,

_____/s/ Maureen O'Connell_____
MAUREEN O'CONNELL
Texas Bar No. 00795949
Attorney-In-Charge
SOUTHERN DISABILITY LAW CENTER
1307 Payne Avenue
Austin, Texas 78757
(512) 458-5800 Phone
(512) 458-5850 Fax
Email: moconnell@sdlcenter.org

MARYANN OVERATH
Texas Bar No. 00786851
ALLIANCE FOR HEALTHCARE REPRESENTATION
TEXAS LEGAL SERVICES CENTER
7800 Shoal Creek Blvd., Suite 171-E
Austin, Texas 78757
(512) 587.1614 Phone
(512) 454.3999 Fax
Email: moverath@tlsc.org

ATTORNEYS FOR PLAINTIFFS