## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| **BRADLEY KOENNING,** | § | |
| **BRIAN MARTIN, and** | § | |
| **MORGAN RYALS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. V-11-6** |
| | § | |
| **THOMAS SUEHS, in his official** | § | |
| **capacity as Executive Commissioner,** | § | |
| **TEXAS HEALTH AND HUMAN** | § | |
| **SERVICES COMMISSION,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Bradley Koenning ("Koenning"), Brian Martin ("Martin"), and Morgan Ryals ("Ryals") (collectively "Plaintiffs") are three disabled young adults who allege that they require custom power wheelchairs with integrated standing features ("mobile standers") to meet their medical, functional, and mobility needs. Defendant Thomas Suehs, Executive Commissioner of the Texas Health and Human Services Commission, (hereinafter "THHSC"),[1] acting through the Texas Medicaid and Healthcare Partnership (TMHP), denied Plaintiffs' requests for mobile standers based solely upon THHSC policy that categorically excludes this item from Medicaid coverage. Plaintiffs allege that THHSC's blanket policy excluding mobile standers contravenes federal Medicaid law and policy, and is therefore unlawful.

---

1. The Court recognizes that the named defendant is Thomas Suehs, but because the suit is against him in his official capacity, the Court refers to the defendant as "THHSC" for the sake of convenience. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (suit against a state official is his official capacity is generally suit against the State itself). That the Court refers to the defendant as THHSC is not meant to imply that the suit against Suehs in his official capacity cannot invoke § 1983. *See Id.* n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159–60 (1908) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'").

Now pending before the Court are Plaintiffs' and THHSC's cross motions for summary judgment (Dkt. Nos. 19 & 21, respectively). The Parties have responded to each other's motions and filed replies, surreplies, and supplemental memoranda. (Dkt. Nos. 24, 26–31.) After considering the issues so exhaustively briefed by the Parties, the record, and the applicable law, the Court is of the opinion that THHSC's motion (Dkt. No. 21) should be **DENIED**, Plaintiffs' motion (Dkt. No. 19) should be **GRANTED in part** and **DENIED in part**, and this case should be **REMANDED** to TMHP for further action consistent with this Order.

## I. Statutory Background

### A. Federal Medicaid Requirements

Medicaid is a cooperative Federal-State program designed to help states provide medical assistance to financially-needy individuals, with the assistance of federal funding. 42 U.S.C. § 1396 *et seq*.; *Schweiker v. Hogan*, 457 U.S. 569, 572 (1982). The federal Medicaid program is administered by a federal agency, Centers for Medicare & Medicaid Services (CMS), and participating States must designate a single state agency to administer their Medicaid program. *See generally* 42 U.S.C. § 1396a.

While state participation in Medicaid is optional, "once a state chooses to join, it must follow the requirements set forth in the Medicaid Act and its implementing regulations." *S.D. v. Hood*, 391 F.3d 581, 586 (5th Cir. 2004) (quoting *Evergreen Presbyterian Ministries, Inc. v. Hood*, 235 F.3d 908, 915 (5th Cir. 2000)); *see also Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990); *Harris v. McRae*, 488 U.S. 297, 301 (1980). To participate, a state must submit a plan to the Secretary of the Department of Health and Human Services that meets the requirements of 42 U.S.C. § 1396a(a). *Wilder*, 496 U.S. at 503. The plan must, among other things, identify the categories of service available to eligible beneficiaries, establish reasonable standards for determining the extent of medical assistance available under the plan, and ensure that each

service included in the plan is "sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 U.S.C. §§ 1396b(a)(1), 1396a(a), 1396a(a)(17); 42 C.F.R. § 440.230(b). Once a state's plan is approved, the federal government subsidizes the state's medical-assistance services. *See* 42 U.S.C. § 1396; *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985).

Participating states must provide medical assistance to the "categorically needy," which includes financially-needy blind, aged, and disabled individuals; pregnant women; and children. 42 U.S.C. § 1396a(a)(10)(A). States may also choose to furnish medical assistance to the "medically needy," which consists of individuals who do not qualify under a federal program but still cannot afford adequate medical care. *Id.* § 1396(a)(10)(C); *Schweiker v. Gray Panthers*, 453 U.S. 34, 37 (1981).

Once a state decides which group(s) will receive medical assistance under its plan, the state then determines which services it will provide. 42 U.S.C. § 1396d(a). To receive federal approval, the Medicaid Act mandates that a plan include seven enumerated medical services— inpatient hospital, outpatient hospital, laboratory and x-ray, nursing facility, physician, nurse-midwife, and nurse-practitioner services. *Id.* §§ 1396a(a)(10), 1396d(a)(1)-(5), (17), (21). A state may also elect to provide optional medical services, such as dental services, prosthetics, and prescription drugs. 42 U.S.C. §§ 1396(a)(10)(A), 1396(d)(a). Once the state offers an optional service, it must comply with all federal statutory and regulatory mandates with respect to that service. *See Hood*, 391 F.3d at 586.

The provision of "home health services"—which are medically-prescribed services provided to a Medicaid recipient at his or her place of residence—is a mandatory requirement for individuals who are entitled to nursing facility services. 42 C.F.R. §§ 440.210(a)(1), 440.70(a). If a recipient receives home health services, the state also must provide "medical supplies, equipment, and appliances suitable for use in the home" as part of the program. *Id.* §§

3

440.70(b)(3), 441.15(a)(3). Durable medical equipment (DME)—which includes, for example, iron lungs, oxygen tents, hospital beds, wheelchairs, and standers—is a required service under the Medicaid Act if the recipient qualifies for home health services. *See* 42 U.S.C. §§ 1396a(a)(10)(D), 1395x(n). Federal law does not presently define the DME benefit; however, CMS has provided official guidance concerning the legal requirements governing Medicaid coverage of DME. *Letter from Sally K. Richardson, Director of Centers for Medicaid and State Operations*, Sept. 4, 1998, ("*DeSario Letter*"), available at http://www.cms.gov/smdl/downloads/SMD090498.pdf (last visited Sept. 18, 2012).

The Medicaid Act identifies the due process rights of Medicaid applicants and participants, including written notice and the opportunity for a fair hearing when assistance or services are denied. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.200 *et seq.* Applicable federal regulations further specify that "the hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and any additional standards specified in this subpart." 42 C.F.R. § 431.205(d).

### B.  Texas Medicaid Statutes, Rules, and Policies

The Texas Medicaid Program is administered by Defendant THHSC, the designated single state Medicaid agency. Tex. Gov't Code § 531.021(a). THHSC contracts with TMHP to administer certain aspects of the Medicaid program, including the prior authorization process, whereby approval is granted or denied for certain types of medical care, treatment, or equipment. (Perez Decl., Dkt. No. 21, Ex. 2 ¶ 12.)

As proscribed by federal regulations, THHSC cannot delegate its authority to issue rules or policies on program matters to contracted entities such as TMHP. 42 C.F.R. § 431.10(e)(1). Rather, TMHP must act in conformity with all statutory and regulatory requirements governing the Texas Medicaid program when deciding whether certain DME will be approved and

subsequently paid for by Medicaid. *Id.* § 431.10(e)(3). In turn, THHSC must comply with the requirements of the Medicaid Act and implementing regulations when promulgating rules and establishing Medicaid policy. *See Hood*, 391 F.3d at 586.

Like all states, Texas Medicaid must provide DME to beneficiaries who are eligible for home health services and have a medical need for such equipment. *See* 42 C.F.R. §§ 440.70(b)(3), 441.15(a)(3). As noted in Part I.A, *supra*, the term "DME" has no federal Medicaid definition. Texas Medicaid, however, defines DME as "[m]achinery or equipment which meets one or both of the following criteria: (A) the projected term of use is more than one year; or (B) reimbursement is made at a cost more than $1,000." 1 TEX. ADMIN. CODE § 354.1031(b)(12). By state policy, DME is defined as medical equipment or appliances that are manufactured to withstand repeated use, ordered by a physician for use in the home, and required to correct or ameliorate a client's disability, condition, or illness. 2010 TEXAS MEDICAID PROVIDER PROCEDURES MANUAL (TMPPM) DME HANDBOOK § 1.2.2.

Texas Medicaid requires prior authorization of most items of DME, including custom power wheelchairs, as a pre-condition to Medicaid reimbursement. 1 TEX. ADMIN. CODE §§ 354.1035(b)(1) and 354.1039(a). TMHP makes DME prior authorization determinations, and when a request is denied, TMHP must send a written denial notice to the Medicaid beneficiary. *Id.* § 357.11(b). THHSC provides administrative hearings to Medicaid beneficiaries who are denied items of DME as non-covered, and THHSC regulations governing such hearings require hearing officers to sustain the denial if it is supported by agency policy. *Id.* § 357.23(e).

## C.  THHSC's Policy Exclusion of Mobile Standers

By THHSC rule, a custom power wheelchair is an item of DME available through the Medicaid home health benefit and is defined as a "customized, specifically tailored or individualized, powered wheelchair[] including appropriate medically justified seating, supports,

and equipment not to exceed an amount specified by the department." 1 TEX. ADMIN. CODE §

354.1039(a)(4)(C)(i)(II). THHSC has no established cost ceiling for custom power wheelchairs.

(Zolondek Dep., Dkt. No. 19, Ex. 4 at 32:22-24; Cannizzaro Dep., *Id.*, Ex. 5 at 63:9-12.)

In 2009, the Texas Legislature adopted the term "wheeled mobility system" to encompass

both custom power and manual wheelchairs and defined this term as:

> [A]n item of durable medical equipment that is a customized powered or manual
> mobility device, including the following features and components:
>
>> (A) seated positioning components;
>> (B) powered or manual seating options;
>> (C) specialty driving controls;
>> (D) multiple adjustment frame;
>> (E) nonstandard performance options; and
>> (F) other complex or specialized components.

TEX. HUM. RES. CODE § 32.0424. Under this definition of "wheeled mobility system," Texas

Medicaid covers a number of power wheelchair features, including seat elevating systems, tilt

and recline, elevating leg rests, and extenders. *Id.*

One power wheelchair feature Texas Medicaid does not cover—which is central to this

lawsuit—is an integrated standing feature. Also known as "mobile standers," power wheelchairs

with standing features enable patients with severe disabilities to stand, helping to counterbalance

the negative effects of prolonged sitting. (Schmeler Aff., Dkt. No. 19, Ex. 6 ¶¶ 16-17.)[2] Separate

or standalone standing frames, which are covered by Texas Medicaid, also enable wheelchair

---

2.  Specifically, standing allows a wheelchair user to extend his hip and knee joints and to decrease the
development of contractures in the lower extremities; provides better alignment of the spine and extension of the
upper trunk, resulting in reduced pressure on the wheelchair user's internal organs, and avoidance of the onset of
respiratory complications often experienced by prolonged sitting in a wheelchair; allows a wheelchair user to more
completely empty his or her bladder, thus decreasing the onset of hypercalcemia and the onset of urinary tract and
kidney infections; reduces the occurrence of chronic constipation, a condition that may lead to bowel obstruction;
addresses the loss of bone mineral density causing osteoporosis and an increased risk of fractures; improves blood
circulation in the lower extremities, thus reducing swelling in a wheelchair user's legs and feet; aids in the reduction
of excess muscle tone and muscle spasticity which can reduce pain, improve comfort and function, and minimize
further loss in range of motion; and provides complete pressure relief on the ischial tuberosities and can decrease the
occurrence of pressure sores for wheelchair users. (*Id.*)

users to experience the medical benefits of standing. (Perez Decl., Dkt. No. 23, Ex. 2 ¶ 6.) However, according to Plaintiff's expert witness, Dr. Mark Schmeler, Ph.D, OTR/L, ATP,[3] by incorporating a standing feature into a wheelchair, individuals with significant physical disabilities can independently attain a standing position numerous times a day without depending upon others to transfer them to a separate standing device and without risking injury during such transfers. (Schmeler Aff. ¶ 15 & Att. A.)

Before 2010, Texas Medicaid excluded mobile standers from Medicaid coverage pursuant to a policy stating that "[m]obile standers are not a benefit of Title XIX Home Health Services." 2009 TMPPM: HOME HEALTH SERVICES §24.4.27. In June 2010, TMHP explained the scope of this policy exclusion by notifying Medicaid providers that "[a] standing system on a power wheelchair is not a benefit of Texas Medicaid." TMHP Banner Message 318, *available at* http://www.tmhp.com/Banner%20Messages/2010-All%20Banner%20Messages.pdf (last visited Sept. 18, 2012). THHSC's current policy now states: "The following mobility aids are not a benefit of Home Health Services . . . Mobile standers, power standing system on a wheeled mobility device." 2011 TMPPM Vol. II: DME, MEDICAL SUPPLIES AND NUTRITIONAL PRODUCTS HANDBOOK § 2.2.14.27. It is this blanket exclusion of mobile standers from coverage that Plaintiffs claim is unlawful.

---

3.   THHSC filed Defendant's Motion to Exclude Plaintiff's Expert Witness (Dkt. No. 18), whereby THHSC argues that Dr. Schmeler's testimony should be excluded under Federal Rules of Evidence 402 and 702 because he "did not examine any of the Plaintiffs here. Mr. Schmeler's role instead is to be an evangelist for the general benefits of 'standing wheelchairs.'" (*Id.* at 2.) In response, Plaintiffs state that Dr. Schmeler does not offer an opinion about Plaintiffs' specific medical needs, but instead addresses whether THHSC's policy exclusion of mobile standers comports with reasonable standards in the field of rehabilitative technology and is consistent with evidence-based practice. (Dkt. No. 25 at 3–4.) The Court finds that Dr. Schmeler's knowledge, skill, experience, training, and education in the area of rehabilitative technology renders him qualified to testify as to the generally accepted standards of practice in the area of rehabilitative technology  and to offer an opinion regarding THHSC's claim that mobile standers are never medically necessary, but are instead convenience or luxury items. Accordingly, Defendant's Motion to Exclude Plaintiff's Expert Witness (Dkt. No. 18) is **DENIED**.

## II. Factual and Procedural Background

### A. Bradley Koenning

Plaintiff Koenning is a 23-year-old Medicaid beneficiary who sustained a C-4 spinal cord injury in a motocross accident in July 2005. (Sitzes Aff., Dkt. No. 19, Ex. 8 ¶ 6.) As a result, Koenning has quadriplegia and is incapable of volitional movement below his shoulders. (*Id.*) At present, Koenning's only functional wheelchair is a manual one that he cannot self-propel. (*Id.* ¶ 5.) He is completely dependent on others to push him from place to place and to reposition him at frequent intervals throughout the day to avoid skin breakdown resulting from prolonged sitting. (*Id.* ¶ 6, Atts. B & C.)

In 2010, Koenning's treating health care professionals evaluated his need for independent mobility and recommended a Permobil C500 custom power wheelchair that included a mobile stander, which would grant Koenning independent mobility by allowing him to control his positioning by operating these functions with a mouth wand. (Sitzes Aff. ¶¶ 5,7,8.) A request for prior authorization of the recommended mobile stander was submitted to the TMHP on December 13, 2010. (*Id.*, Att. A.) A detailed letter of medical necessity signed by Koenning's health care professionals was also submitted to provide a thorough explanation of his medical need for the recommended custom wheelchair. (*Id.*, Att. D.) The letter explained that a mobile stander will address a number of medical complications that Koenning faces, including skin breakdown, urinary tract infections, bladder stones, and the loss of bone density secondary to prolonged sitting. (*Id.*) Standing on a regular basis will also reduce the likelihood of Koenning developing scoliosis and contractures, and it will reduce pressure on Koenning's internal organs, thereby allowing for better digestion, bowel and bladder management, and respiratory function. (*Id.*)

On December 15, 2010, TMHP denied the recommended mobile stander, stating that "[a] power wheelchair with a built-in power standing feature is a type of mobile stander. Texas Medicaid does not cover mobile standers." (TMHP Denial Letter, Dkt. No. 19, Ex. 9 at 2.) The letter also provided that Koenning had the right to request a fair hearing within 90 days. (*Id.* at 3.) Koenning discussed his right to a fair hearing with his lawyer and his occupational therapist but did not request a hearing. (Koenning Dep., Dkt. No. 26, Ex. 20 at 71:22–72:18; 77:1-16.)

### B. Brian Martin

Plaintiff Martin is a 27-year-old Texas Medicaid beneficiary who sustained a C-2/C-3 spinal cord injury in a diving accident at age 20, leaving him unable to walk and with limited use of his hands. (Martin Aff., Dkt. No. 19, Ex. 10 ¶ 3.) Martin has used a power wheelchair since his accident. (*Id.*)

In June 2010, Martin was evaluated by an occupational therapist to determine what wheelchair he requires to address his numerous medical conditions and functional need for mobility. (Duenas Aff., Dkt. No. 19, Ex. 11 ¶ 4 & Att. B.) Working with a certified assistive technology professional, the occupational therapist identified each custom wheelchair component Martin requires, which included a mobile stander. (*Id.*) Upon completion of this assessment, Martin's medical professionals drafted a letter of medical necessity explaining why each of the recommended components, including the mobile stander, is necessary to address Martin's mobility and medical needs. (*Id.*, Att. B**.**) According to the letter, a mobile stander will address a number of medical complications that Martin faces, including the risk of skin breakdown and the development of contractures secondary to prolonged sitting. (*Id.*) The ability to regularly stand will also reduce the further loss of bone density and attendant risk of fractures and decrease pressure on Martin's internal organs, allowing for better digestion, bladder management, and respiratory function. (*Id.*) In August 2010, a Medicaid-enrolled rehabilitation equipment supplier

submitted a request for prior authorization of the mobile stander, along with other required documentation, to TMHP. (*Id.*, Atts. A-C.)

TMHP denied Martin's request on the basis that "[a] power wheelchair with a built-in power standing feature is a type of mobile stander. Texas Medicaid does not cover mobile standers . . . ." (TMHP Denial Letter, Dkt. No. 19, Ex. 12 at 2.) The letter also provided that Martin had the right to request a fair hearing within 90 days. (*Id.*) However, Martin did not request a hearing. (Pl. Compl., Dkt. No. 1 ¶¶ 49, 50.)

### C. Morgan Ryals

Plaintiff Ryals is a 25-year-old Texas Medicaid beneficiary who was diagnosed at birth with spina bifida. (Arvajeh Aff., Dkt. No. 19, Ex. 13 ¶ 3.) As a result, Ryals is paralyzed and unable to walk. (*Id.*) Ryals was diagnosed with a brain tumor as a toddler and sustained further weakness and paralysis of her right hand following surgery. (*Id.*) She also has a number of other physical conditions including scoliosis, hip dislocation, and trunk weakness. (*Id.*)

In August 2010, Ryals was evaluated by a licensed physical therapist and an assistive technology professional to assess her medical need for a power wheelchair and to identify any custom component she requires to address her mobility and medical needs. (Geiger Aff., Dkt. No. 19, Ex. 14 ¶ 5.) Among other features, the assessment concluded that Ryals required a mobile stander. (*Id.* ¶¶ 8, 9.) This assessment and accompanying documentation was submitted by the enrolled Medicaid provider to TMHP for prior authorization. (*Id.* ¶ 8, Att. A.)

On August 31, 2010, TMHP denied Ryals' request on the grounds that "[a] power standing function on a power wheelchair is a type of mobile stander. Mobile standers are not covered by Texas Medicaid Home Health Services. Because mobile standers are not covered by Texas Medicaid Home Health Services, your request cannot be approved." (TMHP Denial Letter, Dkt. No. 19, Ex.15 at 1.) The letter also provided that Ryals had the right to request a fair

hearing within 90 days. (*Id.* at 2.) Ryals requested a hearing and obtained a lawyer to represent her, but then withdrew from the hearing process because her mother was upset that people at THHSC were not providing her answers and thought it was a futile process. (Arvajeh Dep., Dkt. No. 26, Ex. 22 at 44:16–45:7, 47:3–60:5.)

On February 15, 2012, Plaintiffs brought this action alleging that THHSC's blanket policy excluding mobile standers contravenes federal Medicaid law and policy, and is therefore preempted under the Supremacy Clause. Plaintiffs further allege that THHSC's rules and policies, which establish unlawful exclusions of certain items of DME and require hearing officers to uphold these unlawful policies, deprive Plaintiffs of their due process right to a fair hearing as guaranteed by the Fourteenth Amendment and the Medicaid Act.

Plaintiffs and THSCC have both filed motions for summary judgment arguing that they are entitled to judgment as a matter of law.

### III. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Christopher Village, Ltd. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "[T]he court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## IV. Analysis

This case presents three issues: (1) whether THHSC's policy excluding mobile standers from Medicaid coverage conflicts with the Medicaid Act's reasonable standards requirement and implementing amount, duration, and scope rule, and is therefore preempted by the Supremacy Clause; (2) whether THHSC's policy excluding mobile standers from Medicaid coverage without a fair hearing deprives Plaintiffs of the due process rights afforded them by the Fourteenth Amendment and the Medicaid Act and its implementing regulations; and (3) whether

the Court should order THHSC to authorize Medicaid coverage of, and payment for, the Permobil C500 custom power wheelchairs Plaintiffs request.

## A. Standing

As a preliminary matter, the Court must address THHSC's claim that Plaintiffs lack standing to challenge THHSC's policy exclusion of mobile standers because they are unable to prove that have a true medical need for a mobile stander.

The standing of a party is a threshold question apart from the merits of the claim to determine if the "litigant is entitled to have the court decide the merits of the dispute." *Warth v. Seldin*, 422 U.S. 490, 498, 517–18 (1975) ("The rules of standing . . . are threshold determinants of the propriety of judicial intervention."). Article III of the United States Constitution requires that the plaintiff make out an actual "case and controversy" such that the plaintiff must "allege[ ] such a personal stake in the outcome of the controversy" as to warrant the invocation of federal court jurisdiction. *Id.* at 498 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). A federal court's jurisdiction therefore can be invoked only when the plaintiff has individually suffered "some threatened or actual injury resulting from the putatively illegal action." *Id.* at 499 (citations omitted). The actual or threatened injury required by Article III may exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing." *Id.* at 500.

The United States Supreme Court has enunciated a three-part test to determine if a party has standing: (1) plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest that is (a) concrete and particularized (*i.e.* the injury must affect the plaintiff in a personal and individual way) and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing is determined as

of the lawsuit's commencement and the facts as they existed at that time. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989).

Here, Plaintiffs challenge the legality of THHSC's categorical exclusion of mobile standers from Medicaid coverage. There is no dispute that this policy was applied to Plaintiffs' prior authorization requests for mobile standers and was the sole basis for denying these requests. Plaintiffs allege that they have been deprived of the mobile standers recommended by their treating health care professionals to their detriment since 2010, and this injury is real, concrete, and ongoing. Finally, the cause of Plaintiffs' injury is directly traceable to THHSC's policy exclusion of mobile standers and can be redressed by this Court by declaring THHSC's policy exclusion unlawful, enjoining THHSC and THMP from applying this policy to patients' requests for mobile standers, and ordering THMP to reconsider Plaintiffs' requests for mobile standers, taking into account whether the devices are medically necessary.

In its March 1, 2012 Memorandum Opinion & Order granting THHSC's Emergency Motion for Schedule Modification and denying Plaintiffs' Motion for Protective Order, which THHSC quotes in support of its claim that Plaintiffs lack standing, the Court previously stated that:

> the issue of whether Plaintiffs have a medical need for the Permobil C500 will determine whether they have standing to challenge the Permobil C500's exclusion from Texas Medicaid coverage and whether Plaintiffs are entitled to other relief they seek in this action—for example, their request that the Court "[o]rder Defendant to prior authorize the medically necessary [equipment] to which Plaintiffs are entitled."

(Dkt. No. 17 at 4 (quoting (Pl. Compl. at 16).)

Although the Court was correct in stating that whether Plaintiffs have a medical need for a mobile stander will determine whether they are entitled to actually receive coverage for this device, the Court was wrong to state that Plaintiffs must prove medical necessity in order to have

standing to challenge THHSC's exclusion of mobile standers from Medicaid coverage. As the District Court for the District of Louisiana in a similar case challenging a Louisiana policy excluding eyeglasses for certain patients explained, "The question of whether or not the plaintiff would actually receive a [the requested device] as a result of a favorable judgment is immaterial to the standing issue, since it is merely a question of relief." *Ledet v. Fischer*, 548 F. Supp. 775, 780 (M.D. La. 1982) (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 281 n.14 (1978) (standing issue not to be determined by failure of plaintiff to prove that he would have been admitted in the absence of the discriminatory program).

Accordingly, the Court finds that Plaintiffs need not prove that they have a medical need for the Permobil C500 in order to challenge THHSC's blanket exclusion of mobile standers from Texas Medicaid coverage.

### B. Whether THHSC's policy excluding mobile standers from Medicaid coverage is preempted by the Supremacy Clause

The Supremacy Clause provides that "the laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." U.S. CONST. art. VI, cl. 2. As the Eighth Circuit explained in *Lankford v. Sherman*:

> Under the preemption doctrine, state laws that "interfere with, or are contrary to the laws of [C]ongress, made in pursuance of the constitution" are preempted. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991), quoting *Gibbons v. Ogden*, 9 Wheat. 1, 22 U.S. 1, 9 (1824). Where Congress has not expressly preempted or entirely displaced state regulation in a specific field, as with the Medicaid Act, "state law is preempted to the extent that it actually conflicts with federal law." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983). An actual conflict arises where compliance with both state and federal law is a "physical impossibility," or where the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.*, quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963) and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). While Medicaid is a system of cooperative federalism, the same analysis applies; once the state voluntarily accepts the conditions imposed

> by Congress, the Supremacy Clause obliges it to comply with federal
> requirements.

*Lankford v. Sherman*, 451 F.3d 496, 509–10 (8th Cir. 2006) (citing *Jackson v. Rapps*, 947 F.2d 332, 336 (8th Cir. 1991); *King v. Smith*, 392 U.S. 309, 316, 326–27 (1968); *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 337 (5th Cir. 2005) ("once a state has accepted federal funds, it is bound by the strings that accompany them")).

Plaintiffs claim that THHSC's blanket policy excluding mobile standers from coverage is in conflict with the federal Medicaid Act and is preempted by the Supremacy Clause. Specifically, Plaintiffs allege that THHSC's policy violates the "reasonable standards" requirement in 42 U.S.C. § 1396a(a)(17) and the "amount, duration, and scope rule" in 42 C.F.R. § 440.230(b-c). In response, THHSC argues that no private right of action exists to enforce the Medicaid Act, and even if one does, states may properly and reasonably determine what items of DME they will or will not cover, regardless of medical necessity.

### 1.   Whether a private right of action exists to enforce the Medicaid Act

THHSC first argues that, "because the relevant provisions do not 'unambiguously confer[] private individual 'right[s],'' they cannot be enforced in private rights of action under Section 1983." (Dkt. No. 23 at 11 (quoting *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 703–04 (5th Cir. 2007) ("*Equal Access I*").)

In the Fifth Circuit, "[i]t is well-established that the federal courts have jurisdiction under 28 U.S.C. § 1331 over a preemption claim seeking injunctive and declaratory relief." *Planned Parenthood of Houston*, 403 F.3d at 331 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635,641–43) (2002); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)). *See also Hope Med. Grp. for Women v. Edwards*, 63 F.3d. 418 (5th Cir. 1995) (affirming injunction prohibiting state from enforcing statute prohibiting the state's Medicaid program from funding

16

abortions except when necessary to save the life of the mother because state statute conflicted

with federal law). This is true for Spending Clause legislation such as the Medicaid Act:

> There is of course no question that the Federal Government, unless barred by
> some controlling constitutional prohibition, may impose the terms and conditions
> upon which its money allotment to the States shall be disbursed, and that any state
> law or regulation inconsistent with such federal terms and conditions is to that
> extent invalid.

*Planned Parenthood of Houston*, 403 F.3d at 336 (citations omitted). The Fifth Circuit in

*Planned Parenthood of Houston* further recognized that a preemption claim under the

Supreme Clause "does not require a showing . . . that a § 1983 action would also be proper."

*Id.* at 335. *See also Lankford*, 451 F.3d at 509 ("Preemption claims are analyzed under a different

test than section 1983 claims, affording plaintiffs an alternative theory for relief when a state law

conflicts with a federal statute or regulation.") (citing *Golden State Transit Corp. v. City of Los*

*Angeles*, 493 U.S. 103, 108, 117 (1989)); *Planned Parenthood of Cent. Tex. v. Sanchez*, 280 F.

Supp. 2d 590, 599 (W.D. Tex. 2003) ("Even though the Plaintiffs have not demonstrated a right

to sue under section 1983, this Court has jurisdiction over their Supremacy Clause claim under

28 U.S.C. § 1331."). Thus, the Fifth Circuit's decision in *Equal Access I*—which held that

Medicaid's Equal Access provision does not confer individual private rights that are enforceable

under § 1983—does not alter this result. 509 F.3d at 703. The Court further notes that the Fifth

Circuit in *Equal Access II*, on appeal following remand, did not find that no private cause of

action exists under the Supremacy Clause, but instead found that the plaintiff "ha[d] no viable

claim under the Supremacy Clause because it failed to identify any state law or regulation with

which the Reasonable Promptness Provision conflicts and therefore preempts." *Equal Access for*

*El Paso, Inc. v. Hawkins*, 562 F.3d 724, 730 (5th Cir. 2009) ("*Equal Access II*"). Here, unlike

*Equal Access I and II*, Plaintiffs have identified the regulation—specifically the THHSC policy

described in TMMPM § 2.2.14.27 excluding mobile standers from coverage—that they claim

17

directly conflicts with the Medicaid Act's reasonable standards requirement and implementing amount, duration, and scope rule.

Citing the Supreme Court's recent decision in *Douglas v. Independent Living Center of Southern California, Inc.*, 132 S.Ct. 1204 (2012), THHSC further argues that there is no private right of action under the Supremacy Clause to enforce the Medicaid Act, and, to the extent THHSC's state plan violates the federal Medicaid Act, it should be addressed by CMS. According to THHSC, "CMS is specifically aware that 'Mobile standers are not a benefit of [THHSC's] Title XIX Home Health Services'" and "has not expressed concerns about the fact that mobile standers are not covered, and has not required THHSC to start offering coverage of mobile standers." (Dkt. No. 23 at 7–8 (citing Perez Decl. ¶ 10).)

In *Douglas*, the Supreme Court granted certiorari on the question of "whether Medicaid providers and recipients may maintain a cause of action under the Supremacy Clause to enforce a federal Medicaid law—a federal law that, in their view, conflicts with (and pre-empts) state Medicaid statutes that reduce payments to providers." *Douglas*, 132 S.Ct. at 1207. The Court did not answer that question, however, because CMS had since determined that California's action was proper and approved the state's statutory amendment to its plan. *Id.* at 1209. Instead, in a 5-4 decision, the Supreme Court remanded to the Ninth Circuit to address whether a plaintiff may bring a Supremacy Clause challenge where the allegedly non-compliant state law has been approved by CMS. *Id.* at 1211.[4] Thus, according to THHSC, "[t]he *Douglas* case should give courts pause in permitting Supremacy Clause challenges to Medicaid state plans to proceed, especially where CMS has approved the state plan." (Dkt. No. 23 at 12.)

---

4. The four dissenting Justices would have held that "[n]othing in the Medicaid Act allows providers or beneficiaries (or anyone else, for that matter) to sue to enforce § 30(A). The Act instead vests responsibility for enforcement with a federal agency, the Centers for Medicare & Medicaid Services (CMS)." 132 S.Ct. at 1211 (Roberts, J. dissenting).

THHSC relies on a September 23, 2010 email from CMS regional representative Scott Harper purporting to support its position that CMS has vetted and approved Texas' policy exclusion of mobile standers. (Harper 9/23/2010 Email to Zalkovsky, Dkt. No. 21, Ex. 4.) In that email, Harper acknowledged that CMS was aware that THHSC had "a number of absolute exclusions of certain mobility aids, including . . . mobile stander." (*Id.*) However, in another email sent roughly a month later, Harper raised the following question from the CMS Central Office, which Harper felt "could lead to a lengthy discussion" between CMS and THHSC:

> Given the broad definition of DME contained in the State's manual (Medical equipment or appliances that are manufactured to withstand repeated use, ordered by a physician for use in the home, and required to correct or ameliorate a client's disability, condition, or illness.), how is the State's use of "absolute exclusions" in compliance with State requirements and Federal guidelines?

(Harper 10/13/2012 Email to Zalkovsky, Dkt. No. 30, Ex. 1.) Sometime in November 2010, Harper had a conference call with THHSC to discuss THHSC's DME absolute exclusions. (Harper 11/16/2010 Email to Plaintiff's Counsel, Dkt. No. 26, Ex. 14.)  However, THHSC Director of Home Health Policy, Marianna Zolondek, testified that mobile standers were not discussed during this conversation. (Zolondek Dep., Dkt. No. 30, Ex. 3 at 157:3-18.) According to Zolondek, neither she nor anyone at THHSC had ever had any discussions with CMS concerning THHSC's exclusion of mobile standers from coverage. (*Id.* at 160:20-25; 161: 1-11.) Thus, despite THHSC's claims to the contrary, the Court finds that here, unlike *Douglas*, CMS has not approved THHSC's policy exclusion of mobile standers.

Because this case does not involve a state statute that has been officially approved by CMS, the Court finds that Plaintiffs' preemption claims under the Supremacy Clause are not barred by the Supreme Court's decision in *Douglas*. *See Peter B. v. Sanford*, 2012 WL 2149784, *9 n.14 (D.S.C. Jun. 13, 2012) (finding that *Douglas* was "wholly inapplicable" because "[t]he action before this Court does not challenge a state statute, let alone one that has been approved

by CMS"); *Inclusion, Inc. v. Armstrong*, 2012 WL 1231855, *3 (D.N.H. Mar. 2, 2012) (distinguishing *Douglas* because "[t]he action before this Court does not challenge a state statute, let alone a state statute approved by the designated federal agency. Instead, it challenges the IDHW's compliance with state and federal law.").

The Fifth Circuit, as well as district courts herein, currently recognizes preemption challenges to state laws and regulations with respect to Social Security and the Medicaid Act. *Hope Medical*, 63 F.3d at 427 (assuming jurisdiction exists for federal courts to adjudicate plaintiffs' claims that state abortion law conflicts with federal Medicaid law); *Planned Parenthood of Houston*, 403 F.3d at 336 (holding that family planning and abortion services providers had implied right of action to assert preemption claim under Supremacy Clause seeking injunctive relief against enforcement of state statute that was incompatible with Title X); *Women's Hosp. Found. v. Townsend*, 2008 WL 2743284, *11 (M.D. La. July 10, 2008) ("The DHH is bound to administer the State [Medicaid] Plan in accordance with federal law, and to the extent that the state plan conflicts with federal law, the Plaintiffs have sufficiently alleged a Supremacy Clause claim."); *St. Tammany Parish Hosp. Serv. Dist. v. Dep't of Health and Human Res.*, 677 F. Supp. 455, 460 (E.D. La. 1988) ("contrary to the Supremacy Clause," Louisiana Department of Health and Human Resources rule uniformly reducing interim Medicaid reimbursement rates violated federal regulations).

The Court cannot disregard existing Fifth Circuit precedent in the absence of an intervening contrary or superseding decision by the Fifth Circuit sitting *en banc* or by the United States Supreme Court. *See Folger Coffee Co. v. Int'l Union*, 368 Fed. App'x 605, 606 (5th Cir. 2010). Thus, like the Third Circuit in *Lewis v. Alexander*, the Court is "compelled to hold that the Supremacy Clause provides a private right of action here." *Lewis v. Alexander*, — F.3d —, 2012 WL 2334322, *14 (3d Cir. Jun. 20, 2012). "Although the Supreme Court is free to revisit

[the issue] if it so desires," this Court cannot. *Id.* at *14 n.20. *Hope Medical* and *Planned Parenthood of Houston* are "binding precedent unless and until [they are] abrogated by the Supreme Court." *Id.*; *see also Arizona Hosp. and Healthcare Ass'n v. Betlach*, 2012 WL 999066, *11 (D. Ariz. Mar. 23, 2012) ("assum[ing] . . . a Supremacy Clause claim remains viable after the Supreme Court's recent decision in *Douglas*" because, "[a]lthough *Douglas* provides ample reason to doubt the viability of such a claim, the current state of Ninth Circuit law seems to support such claims under the Supremacy Clause.").

### 2. Whether THHSC's policy exclusion of mobile standers violates the Medicaid Act's reasonable standards requirement and implementing amount, duration, and scope rule

While a state has considerable discretion to fashion medical assistance under its Medicaid plan, this discretion is constrained by the reasonable standards requirement. *See Beal v. Doe*, 432 U.S. 438, 444 (1977). Each service the state elects to provide "must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). Additionally, a state "may not arbitrarily deny or reduce the amount, duration, or scope of a required service . . . solely because of the diagnosis, type of illness, or condition." *Id.* § 440.230(c).

Here, Plaintiffs argue that that THHSC's categorical exclusion of mobile standers regardless of medical necessity violates Medicaid's requirement that states create reasonable standards for determining the extent of medical assistance under its plan that are consistent with Medicaid's objectives. *See* 42 U.S.C. § 1396a(a)(17); *Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479 (2002).

THHSC first argues that its policy excluding mobile standers complies with the Medicaid Act's "reasonableness" requirement because its plan still provides for separate wheelchairs and standers to address the medical need for standing treatment by disabled clients. Plaintiffs respond that this argument wrongly assumes that a stationary standing frame will suffice for every

Medicaid beneficiary with a physical disability who has a medical need to stand, regardless of the nature or severity of his or her disability or the range of functional abilities he or she possesses. The Court agrees. Like THHSC here, the Minnesota Department of Human Services (DHS) claimed that it was justified in rejecting a patient's request for a mobile stander as medically unnecessary because a stationary stander was available, and "even standing for 15 minutes per day [could] help." *Johnson v. Minn. Dep't of Human Servs.*, 565 N.W.2d 453, 458 (Minn. App. 1997). DHS further argued that "other types of passive standing devices, such as independent hydraulic or electric standing frames, not combination mobility and standing devices, are recognized as the prevailing standard of practice." *Id.* The court rejected DHS' claim that a stationary stander was adequate and concluded that the requested mobile stander was medically necessary, recognizing that the plaintiff had presented evidence that he could not safely and effectively use passive standing devices without assistance, and a passive standing device would require him to transfer between two devices, thus increasing his risk for falling every time he transferred. *Id.*

THHSC next argues that, even assuming that mobile standers are medically necessary for Plaintiffs, its policy exclusion of mobile standers nonetheless complies with the *DeSario* Letter because states may properly and reasonably determine what items of DME they will or will not cover.

In *DeSario v. Thomas*, the Second Circuit held that Connecticut was not required to cover medically necessary DME items under its Medicaid plan so long as the health care provided was adequate with respect to the needs of the Medicaid population as a whole, and Connecticut's denial of all requests for any DME items that were not on its exclusive list of "covered items" did not violate the objectives of Title XIX. *DeSario v. Thomas*, 139 F.3d 80, 96 (2d Cir. 1998). In response to the Second Circuit's decision in *DeSario*, the director of the Health Care

Financing Administration (HCFA), which administers Medicaid, issued a letter to all state Medicaid directors, providing interpretive guidance regarding coverage of DME. *See* Part I.A, *supra*. The letter—commonly referred to as the "*DeSario* Letter"—indicated that a state could develop a list of pre-approved DME items "as an administrative convenience because such a list eliminates the need to administer an extensive application process for each [DME] request submitted." *DeSario* Letter at 1. However, the letter went on to state that a DME policy "that provides no reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list, is inconsistent with [42 U.S.C. § 1396a(a)(17) and 42 C.F.R. §§ 440.230(b)-(c)]." *Id.* The letter expressly rejected the "population as a whole" test employed by the Second Circuit in *DeSario* because it failed to afford a Medicaid applicant a meaningful opportunity to seek a modification or exception. *Id.* Finally, the letter encouraged state Medicaid directors to view any pre-approved list of DME as "an evolving document that should be updated periodically to reflect available technology." *Id.* Following issuance of the *DeSario* Letter, the Supreme Court vacated the Second Circuit's ruling in *DeSario* and remanded for further consideration "in light of the interpretive guidance issued by [HCFA] on September 4, 1998," *Slekis v. Thomas*, 525 U.S. 1098, 1098 (1999), and no further *DeSario* opinion was issued. Thus, both Parties agree that the best guidance of federal policy regarding coverage of particular items of DME is the *DeSario* Letter.

THHSC maintains that its decision not to offer mobile standers as a benefit was the product of a standardized process that involves specific criteria, which fully complies with the *DeSario* Letter. THHSC explains that the Benefit Management Workgroup (BMW) process reviewed Texas Medicaid's Mobility Aids policies in 2007, including its policy on mobile standers, and records indicate there were safety concerns with mobile standers. (Perez Decl. ¶

9.)[5] The Associate Medical Director reviewing the policy at the time also reported reservations about covering the mobile standers. (*Id.*) THHSC ultimately determined that mobile standers are not "medically necessary," but rather are considered a comfort luxury or convenience item, and thus decided not to cover mobile standers as a Texas Medicaid benefit. (*Id.*)   According to THHSC, "This process complied with the *Desario* Letter, and CMS has not indicated that HHSC must change its policy." (Dkt. No. 23 at 13.)

The *DeSario* Letter explicitly states that "a State will be in compliance with federal Medicaid requirements only if, *with respect to an individual applicant's request for an item of [DME]*," the following criteria are met:

> The process is timely and employs reasonable and specific criteria by which an individual item of [DME] will be judged for coverage under the State's home health services benefit. These criteria must be sufficiently specific to permit a determination of whether an item of [DME] that does not appear on a State's pre-approved list has been arbitrarily excluded from coverage based solely on a diagnosis, type of illness, or condition.
>
> The State's process and criteria, as well as the State's list of pre-approved items, are made available to beneficiaries and the public.

*DeSario Letter* (emphasis added). Because the BMW process does not make determinations as to whether mobile standers are covered *with respect to an individual applicant's request*, but instead made a blanket determination that mobile standers are not covered *with respect to the Texas Medicaid population as a whole*, the Court finds no merit to THHSC's claim that the BMW process complies with the *DeSario* Letter.

THHSC next argues that its decision not to provide coverage for mobile standers is reasonable "[g]iven that administering Medicaid is about making tough decisions on allocating

---

5.   Specifically, information presented to THHSC indicated that power wheelchairs with mobile standers were less maneuverable than other power wheelchairs, more prone to toppling over (due to their higher center of gravity), and would not be safe in the standing position in situations where the floor surface was cracked, rough, or broken. (Perez Decl. ¶ 9.)

limited money . . . ." (Dkt. No. 23 at 4.) THHSC repeatedly complains about the specific mobile stander each Plaintiff seeks in this case, namely based on the cost. The Permobil C500—which THHSC refers to a number of times throughout this litigation as the "Cadillac of wheelchairs" (*See* Dkt. No 21 at 1; Dkt. No. 23 at 9; Dkt. No. 26 at 3, 4; Dkt. No. 30 at 2, 7) —typically retails for $45,000 to $53,000, depending on accessories. (Koenning 8/30/2012 Price Quote, Dkt. No. 19, Ex. 8C.)

Other courts have rejected similar arguments that a state may restrict payment for medically necessary DME "because of limited resources." *White v. Beal*, 555 F.2d 1146, 1149 (3d Cir. 1977). As the Third Circuit explained in *White v. Beal*, "The soaring cost of medical assistance programs is a matter of national concern, and the state's interest in financial responsibility may not be treated lightly." *Id.* However, because the state determined coverage "based solely on the cause of the disability and not on medical necessity," the court did "not believe that the state ha[d] applied a permissible method of obtaining economies in its administration of the medical assistance program." *Id.* Likewise, the Vermont Supreme Court concluded that the state's willingness to provide coverage for eyeglasses but not for closed caption televisions (CCTVs), which are designed for use by the legally blind, was "untenable" because the state "failed . . . to demonstrate any justification for its refusal to provide coverage for CCTVs grounded in 'medical necessity,'" but instead "complain[ed] that providing CCTVs wherever medically necessary would cost too much." *Brisson v. Dep't of Soc. Welfare*, 702 A.2d 405, 408 (Vt. 1997).

In support of their claim that mobile standers should be covered when medically necessary, Plaintiffs point out that THHSC covers mobile standers for Medicaid beneficiaries under the age of 21 but denies this same benefit to adults. (Sitzes Aff., Dkt. No. 19, Ex. 8 ¶ 22.) According to Plaintiffs, because this equipment is covered for beneficiaries under 21 years of

age, THSCC implicitly concedes that mobile standers meet its definitions of DME, and although it labels mobile standers as "comfort luxuries" or "convenience items" for purposes of this lawsuit, THHSC makes no such claim when mobile standers are determined to be medically necessary for beneficiaries under 21. THHSC argues that the fact that individuals under age 21 may receive mobile standers under the Early Periodic Screening, Diagnosis, and Treatment (EPSDT) program "is wholly irrelevant to this lawsuit" because, "for the EPSDT population, the State must provide any medically necessary home health therapy service, regardless whether it's reflected in the State plan." (Dkt. No. 26 at 7, 7 n.4.)

The Court finds no merit to THHSC's claim that the fact "that under 21 individuals may receive mobile standers . . . is wholly irrelevant," as THHSC's own evidence shows that, pursuant to the *DeSario* Letter, the same "home health equipment, supplies, and appliances . . . must be available to the overall population as [are] available to children." (CMS 11/24/2008 Letter to THHSC Director, Dkt. No. 26, Ex. 27-2 at 3.)[6] THHSC's evidence further states that "[t]here is no difference in services for DME for adults or children." (CMS 3/12/2008 letter to THHSC, Dkt. No. 26, Ex. 27-1 at 1.) Plaintiffs have also cited a number of cases holding that states cannot refuse to fund medically necessary DME or medical procedures based solely on the recipient's age.

---

6.  As explained in Part I.A, *supra*, the Medicaid Act identifies over 40 broad categories of health care services, some of which are mandatory and must be included in the state Medicaid plan, while others are optional, to be included at the state's discretion. In 1989, Congress amended the Medicaid Act to ensure that all identified categories of service, whether designated mandatory or optional, are available to Medicaid beneficiaries under 21. 42 U.S.C. § 1396d(r)(5). The service category at issue is home health, a mandatory service that must be included in every Medicaid State plan and covered for eligible beneficiaries regardless of age. 42 U.S.C. § 1396a(a)(10)(D). Within this broader category of home health are several distinct services, including nursing services, aide services, therapy services, and medical equipment, appliances, and supplies. Although some home health services are optional for states to provide, thus allowing states the discretion to provide this service only to beneficiaries under the age of 21, other services, including DME, are mandatory home health services that all states must cover for all ages. 42 C.F.R. § 440.70(b)(3).

In *Fred C. v. Texas Health and Human Services Commission*, Texas Medicaid refused to fund augmentative communication devices (ACD) for people over the age of 21, but did fund ACDs for those in need under the age of 21. *Fred C. v. THHSC*, 988 F. Supp. 1032, 1033 (W.D. Tex. 1997), *aff'd without opinion*, 167 F.3d 537 (5th Cir. 1998). There, as here, THHSC did not deny the ACD met the definitional requirements of DME, nor did it deny the ACD was considered DME for those individuals age 21 and younger. *Id.* at 1035–36. Instead, THHSC argued that it was within its discretion to deny the device to individuals over age 21. *Id.* at 1036. The District Court for the Eastern District of Texas "decline[d] the invitation to reach the callous and clearly unequal result" of denying the plaintiff a medically necessary device that "would routinely be provided were he under the age of twenty-one," holding that age was "wholly unrelated to the medical decision at hand and [could not] meet the fundamental legal concept of reasonableness." *Id.* at 1036–37.

In *Esteban v. Cook*, plaintiffs challenged a Florida policy that covered both motorized and customized wheelchairs for individuals under age 21, but limited coverage of wheelchairs for individuals age 21 and over to wheelchairs costing $582 or less, which effectively denied both motorized and customized  wheelchairs to Medicaid recipients age 21 and over. *Esteban v. Cook*, 77 F. Supp. 2d 1256, 1257 (S.D. Fla. 1999). In rejecting a similar argument by defendants that the state could refuse to cover custom wheelchairs for persons over 21 under EPSDT, the court ruled that "once Florida chose to provide wheelchairs to eligible Medicaid recipients, Florida may not arbitrarily or unreasonably deny motorized wheelchairs to Plaintiffs entirely on the basis of age." *Id.* at 1262 (citing *Hunter v. Chiles*, 944 F. Supp. 914, 920 (S.D. Fla. 1996) (holding that ACDs, which were provided to Medicaid recipients under age 21 under the EPSDT program, could not be denied solely on the basis of age); *Salgado v. Kirschner*, 878 P.2d 659, 660 (Ariz. 1994) (rejecting state's argument that it could choose to provide organ transplants

exclusively to individuals under age 21 based on the EPSDT program)). The court went on to explain that:

> once the State voluntarily elects to provide wheelchairs to eligible Medicaid recipients, it must provide wheelchairs that are sufficient in amount, duration and scope to achieve their purpose. Providing manual wheelchairs to eligible Medicaid recipients with severe mobility impairments is not sufficient to achieve the State's purpose.
>
> * * *
>
> [T]he State's limitation of coverage for the parties in this action seeking customized or motorized wheelchairs with severe mobility impairments is not sufficient in amount, duration and scope to achieve their purpose.

*Id.*

In *Hiltibran v. Levy*, plaintiffs challenged a Missouri Department of Social Services (MDSS) policy whereby individuals over age 20 were not allowed to establish medical necessity for adult diapers, nor were they allowed to use the state's prior authorization process to verify a medical need for adult diapers. *Hiltibran v. Levy*, 793 F. Supp. 2d 1108, 1114 (W.D. Mo. 2011). Despite receiving documentation that adult diapers were medically necessary for plaintiffs, MDSS rejected their request for coverage based on the reasoning that, for adults, "disposable diapers are a personal hygiene item, not a medical item." *Id.* at 1114–15. The court rejected this argument, holding that if the state did not cover medically necessary adult diapers for Medicaid participants over the age of 20, it would be in violation of Medicaid's "reasonable standards" requirement. *Id.* at 1115. *See also Hunter*, 944 F. Supp. at 920 ("This Court concludes that there is not a rational basis to provide speech to one who is twenty years three hundred sixty-four days and deny the same to one who is two days older."); *Bell v. Agency for Health Care Admin.*, 768 So.2d 1203, 1205 (Fla. 1st Dist. Ct. App. 2000) ("Because Appellant is over age 21, there is no procedure available under the Florida Rule by which he can request the insulin pump supplies he seeks. This disparity in coverage discriminates against Florida Medicaid recipients age 21 and

older and violates federal law by arbitrarily and unreasonably excluding coverage of benefits that may be medically necessary.")

Throughout the extensive briefing that has been submitted in this case, THHSC has failed to cite a single case supporting its position that states have broad discretion to categorically exclude an item of medical equipment that meets its definition of DME from Medicaid coverage for adult beneficiaries, regardless of medical necessity. However, Plaintiffs have cited numerous cases holding that such categorical exclusions violate the Medicaid Act's reasonable standards requirement and implementing amount, duration, and scope rule. *See Lankford*, 451 F.3d at 513 ("Because the DME regulation restricts available DME, and plaintiffs have no other procedure to obtain it, the regulation—on the present record—appears unreasonable under directives from both CMS and this court."); *Meyers v. Reagan*, 776 F. 2d 241, 244 (8th Cir. 1985) ("The applicable regulation provides that Meyers is entitled to equipment provided by or under the direction of a speech pathologist that is necessary to correct her speech disorder. 42 C.F.R. § 440.110(c)(1). Thus Iowa cannot arbitrarily exclude electronic speech devices from coverage under its Medicaid program."); *Esteban*, 77 F. Supp. 2d at 1262  ("This Court holds that once the State voluntarily elects to provide wheelchairs to eligible Medicaid recipients, it must provide wheelchairs that are sufficient in amount, duration and scope to achieve their purpose."); *Hunter*, 944 F. Supp. at 920 ("The Court finds that Florida made the voluntary choice to provide optional home health care, including durable medical equipment, to the Plaintiffs. The Court concludes that the ACDS is durable medical equipment and covered as a Florida Medicaid benefit under the home health care provision."); *Blue v. Bonta*, 99 Cal. App. 4th 980, 992–93 (4th Dist. 2002) ("We . . . conclude[] that a stairway chair lift does constitute durable medical equipment, which must be covered by statute, and which cannot be excluded by regulation. . . . [T]he Department may not categorically exclude coverage for stairway chair lifts which are medically necessary.");

*T.L. v. Col. Dep't. of Health Care and Fin.*, 42 P.3d 63, 67 (Colo. App. 2002) ("[W]e conclude that, by expressly excluding home health coverage for hot tub or [J]acuzzi acquisitions under all circumstances and without regard to medical necessity, § 8.593.06(B) violates federal law and the objectives of Title XIX and is therefore invalid."); *Bell*, 768 So. 2d at 1205 (The fact that there is "no procedure available under the Florida Rule by which [plaintiff] can request the insulin pump supplies he seeks . . . violates federal law by arbitrarily and unreasonably excluding coverage of benefits that may be medically necessary."). *See also Weaver v. Reagen*, 886 F.2d 194, 199 (8th Cir. 1989) ("Missouri's Medicaid rule constitut[ing] an irrebuttable presumption that AZT can never be medically necessary treatment for [certain] AIDS patients . . . is unreasonable . . ."); *Pinneke v. Preisser*, 623 F.2d 546, 548 n.2 (8th Cir. 1980) (state cannot enforce a policy that creates an irrebuttable presumption that a particular service or procedure would never be medically necessary because such a restriction is not a reasonable standard consistent with the objectives of Medicaid).

As the Eighth Circuit explained *Lankford*:

> While a state has discretion to determine the optional services in its Medicaid plan, a state's failure to provide Medicaid coverage for non-experimental, medically-necessary services within a covered Medicaid category is both *per se* unreasonable and inconsistent with the stated goals of Medicaid. . . . Because [the State] has elected to cover DME as an optional Medicaid service, it cannot arbitrarily choose which DME items to reimburse under its Medicaid policy.

*Lankford*, 451 F.3d at 511.

Mobile standers satisfy Texas Medicaid's definitions of DME. They are manufactured to withstand repeated use, the projected term of use is more than one year, they cost more than $1,000, and they are prescribed by health care practitioners for use in the home to correct or ameliorate wheelchair users' functional limitations and attendant medical complications resulting from their disabilities. *See* 1 TEX. ADMIN. CODE § 354.1031(b)(12); 2010 TMPPM DME

Handbook, § 1.2.2. Because mobile standers are DME, the Court finds that THSCC must cover all medically necessary mobile standers; if it fails to do so, it is in violation of the Medicaid Act's reasonable standards requirement and implementing amount, scope, and duration rule.

### C. Whether THHSC's policy excluding mobile standers from Medicaid coverage deprives Plaintiffs of their due process rights

Plaintiffs have also alleged that THHSC's policy exclusion of mobile standers, in combination with its hearing rules, deprives them of due process in violation of the Fourteenth Amendment and the due process provisions of the Medicaid Act.

To prevail on a procedural due process claim, a plaintiff must show that he or she has a recognized property or liberty interest and was deprived of that liberty or property interest without adequate notice or meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976). "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755 (2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

As the Eastern District of Texas explained in *Jonathan C. v. Hawkins*, Medicaid beneficiaries have a constitutionally protected property interest in their Medicaid benefits:

> Courts view welfare entitlement more like "property," rather than a "gratuity," and such benefits are a matter of statutory entitlement for persons qualified to receive them. Therefore, under the law, beneficiaries do, in fact, have a constitutionally protected property interest in Medicaid benefits.

*Jonathan C. v. Hawkins,* 2006 WL 3498494, *12 (E.D. Tex. Dec. 5, 2006) (citations omitted). It is well established that individuals who apply for or receive public assistance—for example, to obtain essential medical care—are entitled to certain due process protections, including legally

sufficient notice and the opportunity for a fair hearing, when they are denied this assistance by the state. *Goldberg v. Kelly*, 397 U.S. 254, 264, 267–68 (1970).

The Medicaid Act and its implementing regulations also afford Medicaid beneficiaries specific due process rights when they are denied access to Medicaid-funded health care and treatment. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.200 *et seq*. These protections include timely and adequate notice of the denial and the opportunity for a fair hearing. *Id.* According to the Medicaid Act, a fair hearing must be available "to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). Texas Medicaid policies further provide that Medicaid beneficiaries are entitled to fair hearings when TMHP denies their requests for prior authorization of health care services, including DME. 1 TEX. ADMIN. CODE § 357.3(b)(1)(E).

Plaintiffs acknowledge that Texas Medicaid has policies and practices in place that provide for "fair hearings" but argue that the hearings are not in fact fair because they require hearing officers to uphold TMHP's denial if it is in accordance with THHSC's policies and procedures, without regard to whether THHSC's policies actually comply with federal law. In cases involving a dispute as to the beneficiary's medical need for an item of DME, a hearing officer can resolve the matter based upon the factual evidence presented at the hearing; however, when the denial is based upon one of THHSC's policies excluding a specific item of DME from Medicaid coverage, the hearing officer must uphold the denial of DME since it is supported by THHSC policy. 1 TEX. ADMIN. CODE § 357.23(e). Because hearing officers, like TMHP's reviewers, apply THHSC's policy exclusions as written, Medicaid beneficiaries are denied an individualized determination of their eligibility for the requested item of DME. Thus, Plaintiffs argue, by proclaiming that the mobile stander requested by each Plaintiff is not a benefit of Texas Medicaid, THHSC not only denies Plaintiffs the DME they require in the first instance,

"but also deprives them of a fair hearing in which the proper analysis concerning coverage is employed and the hearing officer is empowered to do more than simply apply unlawful policy and sustain the denial of medically necessary DME." (Dkt. No. 19 at 47.)

Citing the Fifth Circuit's opinion in *Thibodeaux v. Bordelon*, 740 F.2d 329, 338 (5th Cir. 1984), THHSC first argues that Plaintiffs' procedural due process claims are barred because they did not exhaust their administrative remedies by availing themselves of the hearing process. THHSC further argues Plaintiffs were provided due process in the form of fair hearing opportunities, where they could have obtained mobile standers.

### 1. Whether Plaintiffs were required to exhaust administrative remedies

Under federal law, a plaintiff need not exhaust his state administrative remedies before bringing a § 1983 claim, unless Congress creates an exception. *Patsy v. Bd. of Regents*, 457 U.S. 496, 515–16 (1982). The District Court for the Middle District of Louisiana recognized that federal courts have split on this issue but "agree[d] with those holding that there is no implicit or explicit exception in the language of the Medicaid Act." *Doc's Clinic, APMC v. Louisiana ex rel. Dept. of Health and Hosps.*, 2009 WL 3199192, *3 (M.D. La. Sept. 29, 2009) (citing *Alacare, Inc.-North v. Baggiano*, 785 F.2d 963, 970 (11th Cir. 1986); *Curtis v. Taylor*, 625 F.2d 645, 649 (5th Cir. 1980) (allowing plaintiffs to go forward without requiring exhaustion of state remedies)). As the court in *Doc's Clinic* explained:

> Compellingly, the Supreme Court, in limiting exceptions to the no-exhaustion rule to those intended by Congress, noted that Congress understands that courts generally do not require exhaustion as a precondition of maintaining a § 1983 action. *Patsy*, 457 U.S. at 508. Thus, Congress could have written an exhaustion of state administrative remedies requirement into the Medicaid Act, or later included one by amendment. Due to the absence of such language, a judicially imposed exhaustion requirement would, at best, be inconsistent with congressional intent; at worst, it would contradict that intent.

*Id.* (citing *Patsy*, 457 U.S. at 513).

The court in *Ledet v. Fischer* reached the same result. *Ledet v. Fischer*, 548 F. Supp. 775, 780 (M.D. La. 1982). There, the plaintiff challenged a Louisiana regulation whereby adult eyeglasses were made available only to post-cataract surgery patients, of which plaintiff was not one. *Id.* at 180. The court found that the state's argument that the plaintiff's claim was procedurally barred for failure to exhaust administrative remedies was "without merit, since actions found upon 42 U.S.C. § 1983 are free of any requirement of exhaustion of state judicial or administrative remedies." *Id.* at 781 (citing *Gibson v. Berryhill*, 411 U.S. 564, 574 (1973); *Sparks v. Griffin*, 460 F.2d 433, 442 (5th Cir. 1972); *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm.*, 547 F.2d 938 (5th Cir. 1977)). The court further recognized that:

> Plaintiff ha[d] made an administrative claim for the relief which she seeks, which was denied. Assuming that a requirement for exhaustion of state administrative remedies exists, the exhaustion doctrine has been held inapplicable in cases where application for relief to the appropriate administrative tribunal would be totally fruitless, as when the agency involved has a declared policy in support of the conduct being challenged, which is the case here.

*Id.* (citing *Potts v. Flax*, 313 F.2d 284 (5th Cir. 1963)). *See also St. Tammany Parish Hosp. Serv. Dist. v. Dep't of Health and Human Res.*, 677 F. Supp. 455, 461–62 (E.D. La. 1988) (plaintiffs' failure to seek administrative appeal from enforcement of emergency rule reducing interim Medicaid reimbursement rates did not preclude federal action where "administrative appeal would afford the plaintiffs no possibility of relief from the emergency rule").

Plaintiffs have presented evidence of a 2010 hearing decision affirming TMHP's denial of a mobile stander, which supports their claim that the hearing process would have been futile. (THHSC 9/3/2010 Fair Hearing Appeal Letter, Dkt. No. 19, Ex. 17.) There, the hearing officer began by stating that the purpose of the hearing was "to determine if the agency action . . . to deny Appellant's request for a Group IV power wheelchair with power standing feature based on this type mobility aid not being a covered benefit of the Texas Medicaid Home Health Services

program was in accordance with applicable law and policy." (*Id.* at 3.) Then, without any consideration as to whether the requested mobile stander meets Texas' definition of DME or whether it was medically necessary for the appellant, the hearing officer concluded:

> The 2010 Medicaid Medical Policy Manual at Section 52 lists specific non-covered mobility aids. Mobile standers are specifically listed as not a covered benefit of Texas Medicaid home health services. Therefore, the agency action to deny Appellant's request for a group IV power wheelchair with power standing feature was in accordance with applicable law and policy and the action is sustained.

(*Id.* at 5.) When asked about this particular hearing decision in her deposition, THHSC's Director of Appeals, Fairy Rutland, explained that "the hearing officer followed the process," and it "appear[ed] that the hearing officer conducted this hearing in accordance with [] the things we direct them to do." (Rutland Dep., Dkt. No. 24, Ex 2 at 51:15-25, 52:1–4.)

Here, as in *Ledet*, each Plaintiff did make a request for a mobile stander, which was denied per THHSC policy. Because Plaintiffs have shown that application for relief from those decisions via the hearing process would have been "totally fruitless," the Court finds that their procedural due process claims are not barred for failure to exhaust their administrative remedies. *See Ledet*, 548 F. Supp. at 781; *St. Tammany*, 677 F. Supp. at 462.

## 2. Whether the "fair hearings" were in fact fair

THHSC next argues that even if Plaintiffs' due process claims are not procedurally barred, they still fail because Plaintiffs were provided due process in the form of fair hearing opportunities, where they could have obtained mobile standers. Notwithstanding the determination that mobile standers are not a covered benefit, THHSC's rules provide that DME not specifically listed in the rules "may, in exceptional circumstances, be considered for payment when it can be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis." 1 Tex. Admin. Code §

354.1039(a)(4)(D). Thus, according to THHSC, its hearing officers may consider evidence bearing on the issue or claim of "exceptional circumstances." (Leche Decl., Dkt. No. 23, Ex. 3 ¶ 9.) In support of its assertion that the hearings are in fact "fair hearings," THHSC claims that "[m]ultiple prior fair hearing officers have awarded clients 'mobile standers' based on their individualized determination of the facts." (Dkt. No. 23 at 14 (citing Fair Hearing Appeal #818277 dated October 7, 2010, Dkt. No. 23, Ex. 5; Fair Hearing Appeal #526581105 dated March 5, 2010, Dkt. No. 23, Ex. 6).)

With respect to the two hearing decisions offered by THHSC whereby mobile standers were ultimately awarded, it appears the hearing officers were either unaware of, or intentionally disregarded, the fact that mobile standers are excluded from coverage, as neither decision mentions this policy. In both decisions, Medicaid managed care organizations initially denied beneficiaries the requested mobile standers on the basis of medical necessity. (Fair Hearing Appeal #818277, Finding of Fact (FOF) Nos. 11–13; Fair Hearing Appeal #526581105 FOF No. 16.) The hearing officers reviewed the medical evidence and subsequently reversed these denials based upon factual findings as to the applicants' actual medical and functional needs. (Fair Hearing Appeal #818277, FOF Nos. 3–10, Conclusion of Law (COL) Nos. 2, 3; Fair Hearing Appeal #526581105 FOF Nos. 17–21, COL No. 3.) According to THHSC Special Counsel Paul Leche, although hearings officers are instructed to apply agency policy in Medicaid cases, if a hearing officer "deviates" from policy due to the large number of appeals he or she is assigned, the client may prevail at the fair hearing. (Leche Decl., Dkt. No. 23, Ex. 3 ¶5.)

THHSC's own evidence also shows that the hearing process does not allow Medicaid beneficiaries to present evidence on the issue of exceptional circumstances with respect to categorically-excluded DME like mobile standers. Specifically, THHSC Senior Policy Analyst Robert Perez admitted that the consideration of exceptional circumstances "does not apply to

categories of DME specifically called out as a non-covered service . . . ." (Perez Decl. ¶ 14.) TMHP representative Patricia Cannizzaro also testified that the "exceptional circumstances" rule does not apply when an item of DME is specifically excluded from Medicaid coverage:

> Q. Now looking at that point in time prior to the denials that were issued for each of these plaintiffs, why was there no consideration of whether the equipment that they were requesting, the custom power wheelchair with standing feature, could be approved based upon exceptional circumstances?

> A. We have to apply the policy as is . . . And the policy indicates that it's currently not a covered service.

(Cannizzaro Dep., Dkt. No. 19, Ex. 16, 119: 19-25; 120:1-3).

Like Plaintiffs here, the plaintiffs in *Lankford* claimed that Missouri's exceptions process did not provide them with an adequate mechanism to obtain non-covered DME because, even if the provider demonstrated that the item was medically necessary, the regulation provided that "no exception can be made where requested items or services are restricted or specifically prohibited under state or federal law." *Lankford*, 451 F.3d at 513. The Eighth Circuit held that because "the regulation allows no exception for items that are restricted under state law—and the DME regulation specifically restricts all non-covered DME items—the exceptions process does not appear to provide a reasonable opportunity to obtain non-covered items." *Id.*

The Court finds that THHSC cannot unlawfully characterize mobile standers as non-covered and then foreclose any further consideration of the coverage question, including the issue of medical necessity, in a hearing by requiring that the same unlawful policy be followed. Accordingly, THHSC's rules and policies regarding mobile standers do not meet the due process requirements of the Fourteenth Amendment and the Medicaid Act.

### D.  Whether Plaintiffs are entitled to coverage for the Permobil C500 mobile standers they seek

In order to be entitled to coverage for the mobile standers they seek, each Plaintiff must establish that: (1) he or she is eligible for Texas Medicaid; (2) the mobile stander is medically necessary for him or her; (3) he or she qualifies for home health services; and (4) the mobile stander he or she seeks is a covered benefit. *See Fred C.*, 988 F. Supp. at 1035 n.3. Here, it is uncontroverted that each Plaintiff is an eligible Texas Medicaid recipient, he or she qualifies for home health services, and, based on the Court's holding in Part IV.B.2, *supra*, mobile standers are covered as DME through the home health benefit. Thus, the issue of whether a mobile stander is medically necessary for each Plaintiff remains.

THSCC argues that the Court should not award each Plaintiff a Permobil C500 because there is a factual dispute as to whether each Plaintiff has a true medical necessity for a mobile stander. Specifically, THHSC argues that Koenning does not need a mobile stander because he has been using a separate stander and wheelchair for the past six years—rather than a combined mobile stander—and it has not been injurious to his health. (Smith Dep., Dkt. No. 26, Ex. 21 at 24:20–25:13.) THHSC further argues that Ryals' family doctor testified that when she signed the August 16, 2010 request for a mobile stander, she was completely unaware it was for a wheelchair with a power standing feature. (Nuruddin Dep., Dkt. No. 26, Ex. 23 at 31:24–32:7.) THHSC also posits that Martin may not even be able to safely use a mobile stander because he failed his initial standing treatment program on a tilt table. (Martin Medical Records, Dkt. No. 26, Ex. 29.) However, THSCC does acknowledge that Martin's physician testified that he was

"gradually accommodating" to the standing position. (Donovan Dep., Dkt. No. 26, Ex. 25 at 32:11–33:14.)[7]

With respect to all three Plaintiffs, THSCC also complains that their physicians wrongfully use the terms "medically beneficial" and "medically necessary" interchangeably (Smith Dep. at 15:1-22); that wheelchair prescription abuse is rampant in the Medicare program, and "there is no reason to think similar problems do not affect Medicaid" (Dkt. No. 26 at 14 (citing OIG Medicaid Report, *Most Power Wheelchairs in the Medicare Program Did Not Meet Medical Necessity Guidelines*, July 2011, Dkt. No. 26, Ex. 19); and that Martin and Ryals' own private insurance companies also denied their requests for the Permobil C500 (Martin Dep., *Id.*, Ex. 24 at 13:1-16; 15:4-8; Arvajeh Dep., *Id.*, Ex. 22 at 38:1–39:6). As recognized in Part IV.B.2, *supra*, THHSC also repeatedly complains about the Permobil C500's cost. Finally, citing two reports made to the FDA through the "Manufacturer and User Facility Device Experience" (MAUDE) reporting system, THSCC argues that not only is the Permobil C500 expensive, it is not necessarily safe. (9/2/2010 MAUDE Adverse Event Report, Dkt. No. 26, Ex. 15; 9/08/2009 MAUDE Adverse Event Report, *Id.*, Ex. 14.)

In the almost factually identical case of *Johnson v. Minnesota DHS* described in Part IV.B.2 *supra*, the Minnesota Court of Appeals found that a mobile stander was medically necessary for the beneficiary and affirmed the trial court's order reversing the agency's decision denying prior authorization to use medical assistance funds. *Johnson*, 565 N.W.2d at 454. As the *Johnson* court explained, Minnesota appellate courts have the authority to review a decision of

---

7.  THHSC's medical expert, Dr. Laura Prewitt-Buchanan, also offered testimony that a mobile stander would be medically beneficial, but not medically necessary, for each Plaintiff. (Prewitt-Buchanan Decl., Dkt. No. 26, Ex. 14 ¶¶ 6, 7, 9.) However, Dr. Prewitt-Buchanan has never met, observed, evaluated, or even spoken with Plaintiffs. Because Dr. Prewitt-Buchanan admits that "in order to render a valid opinion as to the suitability or benefits of a mobile stander for an individual, an individualized assessment and determination would first be required" (Prewitt-Buchanan Decl., Dkt. No. 18, Ex. 2), the Court finds that she is not qualified to offer a valid opinion about whether a mobile stander is medically necessary for each Plaintiff.

the Commissioner of Human Services pursuant to MINN. STAT. § 14.69, which provides that courts may reverse or modify an agency decision if the decision was "[u]nsupported by substantial evidence in view of the entire record as submitted" or "[a]rbitrary or capricious." *Id.* at 457 (citing MINN. STAT. § 14.69(e)-(f); *Kaplan v. Washington Cnty Cmty. Soc. Servs.*, 494 N.W.2d 487, 489 (Minn. App. 1993)).

In Texas, unlike Minnesota, there is no statutory procedure for judicial review of individual Medicaid eligibility decisions. However, the Court finds the procedures governing Social Security appeals to provide some guidance. With respect to Social Security claims, an individual may file suit in federal district court to review the decision of the Commissioner denying the individual's application for disability insurance benefits. 42 U.S.C. § 405(g). In such an action, the district court may review whether proper legal standards were used to evaluate the evidence "and the validity of such regulations." *Id.* The court may also remand the case to the Commissioner of Social Security for further action and may order additional evidence to be taken. *Id.*

Courts in similar cases involving challenges to the denial of Medicaid benefits have also remanded to the appropriate state agency for further action. *See Myers*, 776 F.2d at 244 (remanding to the district court "with instructions to remand the case to the Department for a hearing to determine which speech device should be furnished to [plaintiff] under Iowa's Medicaid plan"); *T.L.*, 42 P.3d at 67 (remanding to the district court "for remand to the ALJ for further proceedings on [plaintiff's] prior authorization request . . . [b]ecause the rulings of the ALJ and the district court were wholly based on the exclusion in § 8.593.06(B), which we have held to be invalid, [and] there has been no determination of other issues raised by the Department").

In denying each Plaintiff's prior authorization request, TMHP never reached the issue of whether a mobile stander was medically necessary for each Plaintiff. Although Plaintiffs have presented substantial evidence supporting their need for a mobile stander, it is not within the Court's purview to make such a finding, as this decision should lie with TMHP. Accordingly, the Court finds that this case should be remanded to TMHP with instructions to consider whether a Permobil C500 or other mobile stander is medically necessary for each Plaintiff.

## V. Attorney's Fees

In *Maine v. Thiboutot*, the United States Supreme Court concluded that plaintiffs alleging federal violations of the Medicaid program may request attorney's fees under the Civil Rights Attorney's Fees Award Act of 1976. *Maine v. Thiboutot*, 448 U.S. 1, 9–11 (1980). Because Plaintiffs have been successful in their claims, they are entitled to recover their costs and attorney's fees.

## VI. Conclusion

For the foregoing reasons, it is hereby **DECLARED** that THHSC's policy exclusion of mobile standers without regard to medical necessity:

> (1) conflicts with the reasonable standards requirement of the Medicaid Act, 42 U.S.C. § 1396a(a)(17) and the amount, duration, and scope rule, 42 C.F.R. § 430.230;
>
> (2) is preempted by the Supremacy Clause; and
>
> (3) violates the due process protections afforded by the Fourteenth Amendment and relevant provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(3), and 42 C.F.R. § 431.200 *et seq.*

Accordingly, it is hereby **ORDERED** that:

> (1) THHSC's Motion for Summary Judgment (Dkt. No. 21) is **DENIED**;
>
> (2) Plaintiffs' Motion for Summary Judgment (Dkt. No. 19) is **GRANTED in part** and **DENIED in part**;

41

(3) THHSC is **ENJOINED** from enforcing its policy exclusion of mobile standers without regard to medical necessity;

(4) Plaintiffs are entitled to recover their costs, including reasonable attorney's fees; and

(5) This case is **REMANDED** to THMP to determine whether a Permobil C500 or other mobile stander is medically necessary for each Plaintiff.

**SIGNED** this 18th day of September, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

42