UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **BRADLEY KOENNING,** | § | |
| **BRIAN MARTIN, and** | § | |
| **MORGAN RYALS,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-11-6 |
| | § | |
| **THOMAS SUEHS, in his official** | § | |
| **capacity as Executive Commissioner,** | § | |
| **TEXAS HEALTH AND HUMAN** | § | |
| **SERVICES COMMISSION,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Bradley Koenning ("Koenning"), Brian Martin ("Martin"), and Morgan Ryals ("Ryals") (collectively "Plaintiffs") Motion for Attorneys' Fees and Costs (Dkt. No. 36), to which Defendant Thomas Suehs, Executive Commissioner of the Texas Health and Human Services Commission, (hereinafter "THHSC") has responded (Dkt. No. 40) and Plaintiffs have replied (Dkt. No. 42). After consideration of the Parties' arguments and the applicable law, the Court is of the opinion that Plaintiff's Motion for Attorneys' Fees should be granted in part and denied in part.

### I. Factual and Procedural Background

Plaintiffs are three disabled young adults who allege that they require custom power wheelchairs with integrated standing features ("mobile standers") to meet their medical, functional, and mobility needs. After THHSC, acting through the Texas Medicaid and Healthcare Partnership (TMHP), denied Plaintiffs' requests for mobile standers based solely upon THHSC policy that categorically excludes this item from Medicaid coverage, Plaintiffs filed the present lawsuit

1

claiming that: (1) THHSC's policy excluding mobile standers from Medicaid coverage conflicts with the Medicaid Act's reasonable standards requirement and implementing amount, duration, and scope rule, and is therefore preempted by the Supremacy Clause; (2) THHSC's policy excluding mobile standers from Medicaid coverage without a fair hearing deprives Plaintiffs of the due process rights afforded them by the Fourteenth Amendment and the Medicaid Act and its implementing regulations; and (3) the Court should order THHSC to authorize Medicaid coverage of, and payment for, the Permobil C500 mobile standers Plaintiffs requested.

In a Memorandum Opinion and Order issued September 18, 2012, the Court denied THHSC's motion for summary judgment, granted Plaintiffs' motion for summary judgment in part, and declared that THHSC's policy exclusion of mobile standers without regard to medical necessity: (1) conflicts with the reasonable standards requirement of the Medicaid Act, 42 U.S.C. § 1396a(a)(17) and the amount, duration, and scope rule, 42 C.F.R. § 430.230; (2) is preempted by the Supremacy Clause; and (3) violates the due process protections afforded by the Fourteenth Amendment and relevant provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(3), and 42 C.F.R. § 431.200 *et seq. Koenning v. Suehs*, 2012 WL 4127956, *23 (S.D. Tex. Sept. 18, 2012). The Court further ordered that THHSC is enjoined from enforcing its policy exclusion of mobile standers without regard to medical necessity. *Id.* at *24. However, the Court denied Plaintiffs' request that the Court order THHSC to provide Plaintiffs with the requested Permobil C500 wheelchairs and instead remanded the case to THMP to determine whether a Permobil C500 or other mobile stander is medically necessary for each Plaintiff. *Id.* at *23–24. Finally, the Court ordered that Plaintiffs are entitled to recover their costs, including reasonable attorneys' fees. *Id.*

Plaintiffs' thereafter filed the presently pending motion asking the Court to award them attorneys' fees in the amount of $198,464.50 and costs in the amount of $6847.63, for a combined total of $205,312.13.

## II. Motion for Costs

Plaintiffs are the prevailing party in this case because they have obtained "actual relief on the merits of [their] claim that materially alters the legal relationship between the parties by modifying [THHSC's] behavior in a way that directly benefits [Plaintiffs]." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). As the prevailing party, Plaintiffs are entitled to recover their reasonable costs pursuant to Federal Rule of Civil Procedure 54(d). The Court finds reasonable the costs incurred by Plaintiffs as outlined in their Bill of Costs (Dkt. No. 37), and THHSC has indicated that it does not oppose Plaintiffs' Bill of Costs. (*See* Dkt. No. 40 at 3.)

Accordingly, the Court will grant Plaintiffs' motion to tax THHSC for Plaintiffs' general costs in the amount of $6847.63.

## III. Motion for Attorney's Fees

### A. Legal Standard

In determining the appropriate award of attorneys' fees, the Court must calculate a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the attorneys' reasonable hourly rate. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1994). The party seeking to recover fees carries the burden of proving the reasonableness and necessity of hours worked and rate charged. *Smith v. United Nat'l Bank-Denton*, 966 F.2d 973, 978 (5th Cir. 1992). It is within the Court's discretion to adjust the lodestar figure by considering several factors established in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19

(5th Cir. 1974).[1] While a court may adjust the lodestar figure based on the specific circumstances of the case at hand, the lodestar method is presumed to yield the proper amount of attorneys' fees to which a party is entitled. *See Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 565 (1986) ("Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain 'rare' and 'exceptional' cases.") (citations omitted).

**B. Analysis**

As stated above, Plaintiffs seek an award of attorneys' fees in the amount of $198,464.50. Plaintiffs calculate the lodestar figure as follows: (A) lead counsel Maureen O'Connell's 504.90 hours, multiplied by $325.00 (subtotal of $ 164,092.50); plus (B) Ms. O'Connell's 29.80 travel hours, multiplied by $162.50 (subtotal of $4,842.50); plus (C) co-counsel MaryAnn Overath's 131.10 hours, multiplied by $275.00 (subtotal of $28,842.00); plus (D) Ms. Overath's 5.0 travel hours, multiplied by $137.50 (subtotal of $687.50). (O'Connell Aff., Dkt. No. 36, Ex. A at 6, 48; Overath Aff., Dkt. No. 36, Ex. B at 3–4, 17.) In support of this lodestar figure, Plaintiffs have provided counsels' contemporaneously-created records that include hundreds of entries spanning the course of this two-year litigation. These records indicate that Plaintiffs' counsel have excluded over 200 hours of their time in this case because, as Plaintiffs explain, "plaintiffs are expected to exercise billing judgment by 'writing off unproductive, excessive, or redundant hours.'" (Dkt. No. 36 at 3 (quoting *Walker v. U.S. Dept. of Housing and Urban Development*, 99

---

1. The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Jason D.W. v. Houston ISD*, 158 F.3d 205, 209 (5th Cir. 1998).

F.3d 761, 769 (5th Cir. 1996)). Travel time was also billed at 50% of counsels' customary hourly rates.

THHSC nonetheless objects to Plaintiffs' fee request, arguing that: (1) Plaintiffs improperly seek recovery of fees attributed to the work establishing "medical necessity" in an unsuccessful effort to have the Court grant injunctive relief providing Plaintiffs with Permobil C500 mobile standers; (2) Plaintiffs fail to segregate fees for work related to their § 1983 due process claim from fees related to their Supremacy Clause claim; (3) Plaintiffs' time sheet descriptions are often vague and reflect work not necessary for this litigation; and (4) Plaintiffs seek an hourly fee not consistent with the Court's local legal market.

The Court has considered each of THHSC's objections in its assessment of the appropriate attorneys' fees and addresses them individually below.

### 1. Fees Related to "Medical Necessity"

THHSC first argues that Plaintiffs should not be entitled to recover fees related to the issue of medical necessity. A sharply disputed issue in this case was whether each Plaintiff had a genuine medical need for a Permobil C500 mobile stander and whether such need would justify injunctive relief from the Court awarding them such devices. Plaintiffs' counsel assigned a substantial number of hours related to the medical necessity issue, including reviewing medical documents, attending depositions of three doctors, and revising Plaintiff's motion for summary judgment regarding medical necessity. However, THHSC complains, Plaintiffs fail to segregate out time related to the medical necessity issue and their unsuccessful attempt to persuade the Court to grant the requested Permobil C500 mobile standers. THHSC therefore asks the Court to reduce the number of attorney hours that form the basis of the lodestar calculation by at least

15% or, at a minimum, require Plaintiffs to segregate out fees related to the medical necessity issue.

In response, Plaintiffs argue that they are entitled to all time reasonably expended on the issue of medical necessity because THHSC argued that without proof of medical necessity for the recommended mobile standers, Plaintiffs did not have standing to bring this lawsuit. According to Plaintiffs, counsel's time spent attending THHSC's depositions of Plaintiffs' treating physicians, reviewing Plaintiffs' medical records, or briefing the issue of medical necessity was reasonable and necessary to respond to THHSC's standing challenge in this case.

As stated above, the Court may adjust the lodestar figure by considering twelve factors. *See Johnson*, 488 F.2d at 717–19; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992). The most influential of these factors in the assessment of a fee award is "the degree of success obtained." *Farrar*, 506 U.S. at 114. In this case, the Court directly addressed THHSC's claim that "Plaintiffs lack standing to challenge THHSC's policy exclusion of mobile standers because they are unable to prove they have a true medical need for a mobile stander" and ultimately concluded that Plaintiffs "need not prove that they have a medical need for the Permobil C500 in order to challenge THHSC's blank exclusion of mobile standers from Texas Medicaid coverage." *Koenning*, 2012 WL 4127956 at *7–9. While Plaintiffs are correct that they prevailed on the jurisdictional issue, Plaintiffs were not successful on their claim for injunctive relief from the Court awarding them the requested Permobil C500 mobile standers. Accordingly, the Court finds that Plaintiffs' fees should be reduced by 10%.

### 2. Failure to Segregate Fees for Work Related to Due Process and Work Related to Supremacy Clause

THHSC next complains that this case is "mainly a Supremacy Clause case . . . shoehorned into ancillary § 1983 due process claims," and the fees should be reduced to reflect

6

only the scope of Plaintiffs' § 1983 claim. (Dkt. No. 40 at 6.) Quoting the Fifth Circuit's opinion in *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 480 F.3d 734, 738 (5th Cir. 2007), THHSC argues that because "Plaintiffs' 'Supremacy Clause claim, standing alone, would not support an award of attorney's fees under § 1988," the Court should not award fees for the Supremacy Clause claim, or in the alternative, should discount time related to the Supremacy Clause claim by 50%. (*Id.* at 6–7.)

In response, Plaintiffs argue that THHSC's suggestion that Plaintiffs' § 1983 due process claims were "ancillary" to their Supremacy Clause claim is incorrect because proof of their due process claims required Plaintiffs to demonstrate that THHSC's policy was in conflict with federal Medicaid requirements and that the fair hearing process violated Plaintiffs' due process right to challenge denials based upon this unlawful policy. Plaintiffs also quote the Fifth Circuit's opinion in *Planned Parenthood*, which recognized that "where a plaintiff prevails on both a § 1983 claim and a Supremacy Clause claim that are based on a 'common nucleus of operative facts' the plaintiff may recover attorney's fees for both claims," and argue that "this is precisely what happened here." (Dkt. No. 41 at 4 (quoting *Planned Parenthood*, 480 F.3d at 739).

The Court agrees that Plaintiffs' Supremacy Clause and due process claims are based upon a "common nucleus of operative facts" involving THHSC's unlawful policy exclusion of mobile standers and the application of this unlawful policy at the prior authorization and fair hearing stages. The Court will not require Plaintiffs to segregate out fees related to their Supremacy Clause claim or reduce Plaintiffs' fees by 50% as THHSC requested; however, because Plaintiffs' Supremacy Clause claims alone do not support an award of attorney's fees under § 1988, the Court finds that Plaintiffs' attorneys' fees should be reduced by 10%.

### 3. Vague Descriptions and Unnecessary Work

THHSC further argues that Plaintiffs' "vague entries about pre-litigation advocacy" suggest that they are attempting to recover for work that did not relate to the prosecution of their claims, but instead was directed more at changing the minds of the federal Centers for Medicare & Medicaid Services (CMS) with respect to its policy exclusion of mobile standers. (Dkt. No. 40 at 8.) Specifically, THHSC complains that Ms. O'Connell's time entries concerning phone calls and emails to CMS potentially reflect general advocacy, rather than reasonable and necessary efforts regarding this litigation. THHSC also complains that Ms. O'Connell took six months of pre-litigation activity to file the February 15, 2011 complaint in this case and billed over 11 hours to draft the complaint, spread out from October 8, 2010 through January 26, 2011. Thus, THHSC argues that Plaintiffs' fee request should be further downward adjusted, despite Plaintiffs' claims that they have already reduced their billings by 20 %.

Plaintiffs respond that each of the entries between September 9, 2010 and February 15, 2011 describe with specificity every task that was completed, including the initial drafting of the Complaint, twice revising the Complaint to add new Plaintiffs, and making repeated contacts with THHSC legal staff in an attempt to settle the case for two Plaintiffs before filing this lawsuit. Plaintiffs further argue that THHSC's characterization of counsel's communication with CMS as "general advocacy" is incorrect, and to the extent that counsel did engage in advocacy with CMS with respect to its home health policies, such time was eliminated from counsels' time records and was not submitted to the Court. In total, Plaintiffs claim their counsel exercised billing judgment concerning their "pre-litigation activity" and reduced their time during this period by over 24 hours.

The Court finds that time entries by Plaintiffs' counsel were not vague and further accepts Plaintiffs' representation that any time Plaintiffs' counsel spent in "general advocacy" with CMS was not submitted to the Court. Thus, THHSC's request that the fee request should be further downward adjusted based on "pre-litigation advocacy" is denied.

### 4. Hourly Fee

The Parties agree that "the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate." *Vanderbilt Mort. & Fin., Inc. v. Flores*, 2011 WL 2160928 at *3 (S.D. Tex. May 27, 2011). However, THHSC argues that the hourly rates of $325 and $275 that Plaintiffs proposed to calculate the lodestar are not justified because, according to a 2009 Hourly Rate Fact Sheet provided by the State Bar of Texas, the overall median hourly rate in the "East & Northeast Texas MSA" region, which includes Victoria, was $199, and for attorneys with over 25 years of experience, the median rate was $228. STATE BAR OF TEXAS DEP'T OF RESEARCH & ANALYSIS 2009 HOURLY FACT SHEET at 10–11, available at *www.texasbar.com/AM/Template.fm?Section=Research_and_Analysis&Template=/CM/ContentDisplay.cfm&ContentID=11240* (last visited November 13, 2012). Because Plaintiffs failed to establish their higher requested hourly rates by submitting with their motion the affidavit of another practicing lawyer in the Victoria community, THHSC asks the Court to reduce the requested rates of each counsel by $50 per hour. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993)).

Plaintiffs argue that their counsel's hourly rates should not be compensated based on median hourly rates for attorneys in the Victoria area. Instead, the Court should apply the "high" rate for attorneys practicing health law to account for their counsels' level of experience. Ms.

O'Connell has been practicing law for 32 years and has represented clients with disabilities in a variety of civil rights cases. (O'Connell Aff. ¶¶ 5–8.) Ms. Overath has represented clients with disabilities in the area of healthcare for over 19 years and has represented clients with Medicaid issues for over 13 years. (Overath Aff. ¶ 6.) According to a 2005 Hourly Rate Fact Sheet provided by the State Bar of Texas,[2] the high rate for attorneys practicing health law in 2005 was $450, while the high rate for attorneys practicing generally within the East Northeast MSA was $400. (2005 FACT SHEET at 13, 27.) Plaintiffs also submitted with their reply brief the sworn declaration of John W. Griffin, Jr., an experienced trial lawyer practicing in Victoria. (Griffin Aff., Dkt. No. 42, Ex. A.) According to Mr. Griffin, the hourly rates claimed by Plaintiffs' counsel are consistent with, if not less than, the prevailing rates of lawyers with similar experience practicing in the Victoria area and are less than the rates that he charges for similar cases. (*Id.* ¶¶ 5–7.)

The Court finds that Plaintiffs have offered sufficient evidence supporting their counsels' hourly rates of $325 for Ms. O'Connell and $275 for Ms. Overath and will therefore deny THHSC's request for a downward adjustment of these rates.

### 5. Unnecessary travel

Although this issue was not raised by THHSC, the Court finds that Plaintiffs' attorneys' fees should be reduced based on unnecessary travel time. The time records submitted by Plaintiffs show that Ms. O'Connell and Ms. Overath both traveled to Victoria from Austin to attend a status conference. Based on the nature of the conference, it was not necessary for two attorneys to appear in person, therefore a reduction is warranted. Thus, the Court will subtract

---

[2] Because the 2009 Fact Sheet lacks "high and low rate data," the Court references the 2005 Fact Sheet for these data.

$550.00 from Plaintiffs' attorneys' fees, which is based on Ms. Overath's 4-hour round trip billed at $137.50 per hour.

### C. Total Amount Reduced and Total Awarded

Plaintiffs originally requested attorneys' fees of $198,464.50. After deducting $550.00 in travel costs and reducing that number by 20% based on THHSC's objections regarding Plaintiffs Supremacy Clause claims and lack of success on their request for injunctive relief, the Court finds that Plaintiffs' reasonable attorneys' fees are $158,331.60. As noted above, the Court also awards Plaintiff court costs in the amount of $6847.63.

### IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 36) is **GRANTED IN PART** and **DENIED IN PART**. It is **ORDERED** that Plaintiffs shall recover from THHSC attorneys' fees in the amount of $158,331.60 and court costs in the amount of $6847.63.

**SIGNED** this 14th day of November, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE